UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JENNIFER L. O'NEILL,                          :

                   Plaintiff,     :     Case No. 11-Civ-9128 (PGG)

      -against-                             :     ECF

MERMAID TOURING INC. AND               :
STEFANI JOANNE GERMANOTTA,
a/k/a "LADY GAGA,"                          :

              Defendants.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF JENNIFER L. O'NEILL'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO MOTION TO QUASH</u>**



                         SNITOW KANFER HOLTZER & MILLUS, LLP
                         575 Lexington Avenue, 14th Floor
                         New York, New York 10022
                         (212) 317-8500

                         *Attorneys for Jennifer L. O'Neill*



Of Counsel: Paul F. Millus
             Virginia K. Trunkes

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    THE SUBPOENA SHOULD BE UPHELD AND MR.
    RICHARDSON SHOULD BE ORDERED TO PRODUCE
    THE PHOTOS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    The Photos are Highly Probative, Not Obtainable From
             Another Source and There Has Been No Other Opportunity
             to Obtain Equivalent Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Mr. Richardson Has Not Sustained His Burden of Undue
             Hardship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    No Privacy Concerns are Not Implicated by Discovery of
             the Photgraphs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.    Defendants Do Not Claim Any Prejudice for Receiving
             Notice of the Subpoena at or About the Time it Was
             Served . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        E.    There is No Basis for an Award of Attorneys' Fees
             to Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Page(s)**

*Carey v. Berisford Metals Corp.*,
  1991 WL 44843, *8 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cohen v. City of New York*,
  255 F.R.D. 110 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ceramic Corp. of America v. Inka Maritime Corp.*,
  163 F.R.D. 584 (D.C. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dove v. Atl. Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*During v. City Univ. of N.Y.*,
  2006 WL 2192843, at *2 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Fears v. Wilhelmina Model Agency, Inc.*,
  No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . 10

*Fox Indus. Inc. v. Gurovich*,
  2006 WL 2882580, *11 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*GMA Accessories, Inc. v. Electric Wonderland, Inc.*,
  2012 WL 1933558, *5 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Griffith v. U.S.*,
  2007 WL 1222586, *4 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*In re Healy*,
  2008 WL 94106 (Bankr. E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Refco Securities Litigation*,
  759 F.Supp.2d 342 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Jones v. Hirschfeld*,
  219 F.R.D. 71 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kingsway Fin. Servs. v. Pricewaterhouse–Coopers LLP*
  2008 WL 4452134 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 15

*Ludlow Corp. v. DeSmedt,*
    249 F.Supp. 496 (S.D.N.Y. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Malinowski v. Wall Street Source, Inc.,*
    2010 WL 4967474, *2 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*May v. F/V LORENA MARIE,*
    2011 WL 1875470, *2 (D. Alaska 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*McVane v. FDIC (In re McVane),*
    44 F.3d 1127 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH,*
    1998 WL 338106, at *1 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.,*
    2003 WL 23018833, at **8-9 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Penthouse Int'l, Ltd. v. Playboy Enterprises,*
    663 F.2d 371 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sea Tow Int'l, Inc. v. Pontin,*
    246 F.R.D. 421 (E.D.N.Y.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Seewald v. IIS Intelligent Information Sys., Ltd.,*
    1996 WL 612497, *5 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sierra Rutile Ltd. v. Katz,*
    1994 WL 185751, *2 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Stickels v. General Rental Co., Inc.,*
    750 F.Supp. 729 (E.D. Va. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*U.S. E.E.O.C. v. Dillard's, Inc.,*
    2008 WL 2473852 (M.D. Fla. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zinter Handling, Inc. v. Gen. Elec. Co.,*
    2006 WL 3359317, *2 (N.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

Fed.R.Civ.P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed.R.Civ.P. 26(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed.R.Civ.P. 45(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Fed.R.Civ.P. 45(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed.R.Civ.P. 45(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Fed.R.Civ.P. 45(c)(3)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Fed.R.Civ.P. 45(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

## RULES

Rule 26(c), Fed.R.Civ.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

## OTHER AUTHORITIES

1991 Advisory Committee Notes to Fed.R.Civ.P. 45(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

David D. Siegel, Practice Commentary C45-20, 28 U.S.C.A., Fed. R. Civ. P. 45  . . . . . . . . . . .  16

**PLAINTIFF JENNIFER L. O'NEILL'S MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO QUASH**

Plaintiff Jennifer L. O'Neill submits this memorandum of law in opposition to the motion of Stefani Germanotta and Terry Richardson for an Order pursuant to Fed.R.Civ.P. 45(c)(3) to quash the subpoena duces tecum served on Mr. Richardson on August 16, 2012.

## PRELIMINARY STATEMENT

Ms. O'Neill brought this action under the Fair Labor Standards Act and New York State Labor Laws to recover compensation for the overtime hours which she worked as a personal assistant for Stefani Germanotta, a/k/a "Lady Gaga." Ms. O'Neill seeks compensation for the overtime hours during which she was physically worked as well as the time during which she was on call beyond eight hours a day. She claims that as the sole personal assistant for the international superstar for most of her tenure with Defendants, on a daily basis she either worked at Ms. Germanotta's side or was otherwise physically "working," or expected to be "on call" essentially every minute of every day during which she was not formally provided an official "time off."[1] Indeed, the tour manager confirmed at her deposition that a "good" personal assistant to a star celebrity "has to be available ... whenever that star needs them." *See* Morris Deposition, page 18, annexed as Exhibit "C."

Defendants admit that they did not keep time records of Ms. O'Neill's hours worked. *See* Responses to Requests to Admit, page 6, Response to Request No. 11, annexed as Exhibit "D." Thus, the primary issue in dispute is the extent of hours which Ms. O'Neill worked

---

[1]     Ms. O'Neill acknowledges that she received approximately one month of a "vacation" in January 2011, during which period she did in fact work, but for which she has not sought the payment of overtime.

beyond forty (40) hours a week.

Without time records as required by law, Ms. O'Neill is left to piece together her claim of working hours in excess of forty (40) hours per week through her testimony and any other evidence that may exist. Toward that end, digital photographs that are surely dated and time-stamped would provide some relevant insight into what Ms. O'Neill was doing and when.

Meanwhile, it is undisputed that during a portion of Ms. O'Neill's tenure of employment with Defendants, photographer Terry Richardson was assigned to take photographs of Ms. Germanotta's "life" during the Monster Ball Tour. He was given full access to every aspect of the tour, including behind-the-scenes events, such as the "quick change." O'Neill Decl. ¶ 5. He himself claims that he took tens of thousands of photographs during the relevant time period, mostly of Ms. Germanotta and aspects involving her tour, versus of other clients. Richardson Decl. ¶ 7.[2]

As Ms. Germanotta's personal assistant who was regularly present with Ms. Germanotta, Ms. O'Neill estimates that she was in perhaps thousands of those photographs. O'Neill Decl. ¶ 6. Ms. Germanotta herself acknowledged that it is possible that some of the photographs taken may include Ms. O'Neill. *See* Germanotta Deposition, page 165, annexed as Exhibit "E." As Ms. Germanotta and her tour manager have particularly challenged Ms. O'Neill's claim that she was working during Ms. Germanotta's performances, proof demonstrating otherwise will not only counter those assertions in a substantive way, but will also

---

[2]     Defendants disingenuously interpret the subpoena as demanding photographs of clients other than Ms. Germanotta during the relevant time period. Of course Ms. O'Neill is not seeking photographs involving other clients. To the extent the subpoena could have been drafted more artfully, Ms. O'Neill will readily stipulate to exclude photographs taken for other clients.

call into question the witnesses' credibility for trial.

Defendants seek to block the discovery of clear, objective evidence in the form of the subject photographs. Defendants' contentions that the subpoena is overbroad, seeks irrelevant documents and is harassing are utterly unfounded. As elaborated below, the photographs requested are entirely relevant, and on the issue of undue burden, Mr. Richardson does not meaningfully address what efforts he would have to make to retrieve the digital photos, thus rendering his contention specious.

Defendants also cannot sustain their burden in demonstrating that Ms. Germanotta's "privacy interests" should override Ms. O'Neill's entitlement to probative, non-cumulative evidence of her working hours. At the very least, the Stipulated Confidentiality Agreement and Protective Order dated June 6, 2012 ("Confidentiality Agreement") which governs this action nullifies any privacy concerns. *See* Confidentiality Agreement annexed as Exhibit "F." Further, as will be aptly demonstrated herein, Ms. Germanotta is probably the last person in the world to care about her "privacy," exposing herself in all manner of bizarre and intimate ways for the world to see every day.

Moreover, Defendants' counsel's claim that they did not receive proper notice of the service of the subpoena is an act of desperation. Counsel received almost simultaneous notice of the service and was probably more upset that Ms. O'Neill was able to personally serve the subpoena without counsel's having the opportunity to communicate Ms. O'Neill's intent to Mr. Richardson prior to the arrival of the process server at his studio. For all of these reasons, Defendants are certainly not entitled to attorneys fees.

Accordingly, it is respectfully submitted that the motion to quash should be denied in its entirety.

## ARGUMENT

### THE SUBPOENA SHOULD BE UPHELD AND
### MR. RICHARDSON SHOULD BE ORDERED TO PRODUCE THE PHOTOS

The subpoena duces tecum is fully appropriate and reasonable, seeks relevant evidence and does not give rise to any basis on which to quash it.

Generally, a party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party. Fed.R.Civ.P. 26(b)(1). "Where ... the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Penthouse Int'l, Ltd. v. Playboy Enterprises*, 663 F.2d 371, 391 (2d Cir. 1981).

Fed.R.Civ.P. 45(c) protects non-parties subject to a subpoena by mandating that a Court "quash or modify the subpoena if it ... subjects [the] person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv).  In determining whether compliance with the subpoena would cause an undue burden, a court is to consider whether:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).  The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant. *See, e.g., Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (*citing Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir.

1981)); *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003); *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 1998 WL 338106, at *1 (S.D.N.Y. 1998).

Defendants have not even attempted to meet their burden to quash the subpoena duces tecum, and Mr. Richardson should produce the requested photos forthwith.

## A.    The Photos are Highly Probative, Not Obtainable from Another Source and There Has Been No Other Opportunity to Obtain Equivalent Evidence

Photographs depicting Ms. O'Neill on various dates and times could not be more relevant, are only available from Mr. Richardson who was shooting aspects of the Monster Ball Tour "continuously" (*see* Exhibit "E," p. 166 *supra*) during Ms. O'Neill's tenure and Ms. O'Neill cannot obtain equivalent evidence elsewhere.

Although a subpoena may be quashed if it calls for clearly irrelevant matter, a subpoena should generally be upheld if there is any ground on which the information demanded might be relevant. *See In re Refco Securities Litigation,* 759 F.Supp.2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)"); *During v. City Univ. of N.Y.*, 2006 WL 2192843, at *2 (S.D.N.Y. 2006) ("Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to Rule 26(b)(1)'s overriding relevance requirement."); *Ludlow Corp. v. DeSmedt*, 249 F.Supp. 496 (S.D.N.Y. 1966), *affirmed* 366 F.2d 464 (2d Cir. 1966), *certiorari denied* 87 S.Ct. 513, 385 U.S. 974 (a subpoena generally meets the requirements for enforcement if the information sought is only reasonably relevant to the ultimate inquiry).

5

Photographs including Ms. O'Neill comprise a key source of evidence of the amount of hours which Ms. O'Neill worked and thus are clearly relevant to her claims. The subpoena requests that Mr. Richardson produce the images involving Ms. Germanotta and any thing or person associated with her tour for the relevant time period. As Mr. Richardson admits in his Declaration in support of his motion, the "vast majority" of the "tens of thousands of photographs" which he took during the relevant time period "were of Stefani Germanotta ... or of other persons or objects that were part of her tour or otherwise involved in her performances/ appearances." Richardson Decl. ¶ 7. Ms. Germanotta does not dispute that some of these photographs may include Ms. O'Neill. *See* Exhibit "E," *supra*.

The photographs will likely show where Ms. O'Neill was and what she was doing on the date and time of each photograph. This will account for periods of time during which the emails do not, including the extent to which Ms. O'Neill was working backstage or otherwise directly assisting Ms. Germanotta, at all hours of the day and night, including within her bedroom. O'Neill Decl. ¶ 6. Resolution of this essential dispute will thus bear significantly on the outcome of the case, demonstrating the photographs' relevance. *See e.g. Cohen v. City of New York*, 255 F.R.D. 110, 121 (S.D.N.Y. 2008) (a subpoena directing a non-party private videography company to produce the videotapes in its possession depicting arrests at a mass demonstration would not be quashed on the ground of undue burden in an arrestee's civil rights action against the city police department and police officers; although some of the tapes depicted locations where no arrests occurred, each videotape was unique and depicted different viewpoints on the confrontation); *see also May v. F/V LORENA MARIE*, 2011 WL 1875470, *2 (D. Alaska 2011) (still and video images from a runabout taken during the time two vessels collided were

relevant and discoverable because they would likely show who was at fault for the collision); *Stickels v. General Rental Co., Inc.*, 750 F.Supp. 729, 732 (E.D. Va. 1990) (unpublished photos and negatives of an accident scene taken by a reporter were "clearly relevant to the case; the appearance and location of the man lift immediately after the accident may provide important information concerning the way it was being used at the time of the accident").

Although to some extent information about the hours which Ms. O'Neill worked can be derived from witnesses' testimony and email correspondence, it is a photograph which tells a thousand words. The reasoning of the *Stickels* Court in ordering disclosure of the unpublished photos of the accident scene is instructive:

> While there is certainly the possibility that witnesses to the accident might provide some insight into the circumstances surrounding the accident, this Court is not blind to the unique nature of photographs. They provide detailed and unusually credible evidence, beyond that possible by even the most reliable testimony.

*Id*, at 732.

Defendants contest the relevance of the photos subpoenaed in part on the ground that because much of Ms. O'Neill's claim includes "on call" time, the extent to which she actually worked is not important. (MOL at 8.) The fundamental problem with Defendants' argument, however, is that Ms. Germanotta denies that Ms. O'Neill was "on call" when she was not working directly with her.

As for the times which Ms. O'Neill claims she was working directly with Ms. Germanotta, Ms. Germanotta also denies recalling that Ms. O'Neill regularly participated in the backstage "quick change." *See* Germanotta Deposition, pages 103 and 162, annexed as Exhibit "G." The quick change occurred seventeen times a night during the dozens of performances

7

relevant to this case. O'Neill Decl. ¶ 7.  It requires five people (*see* Morris Deposition, annexed as Exhibit "H," page 41), and the process has been described as "akin to launching a space shuttle." *See* Jonathan Van Meter, *Dream Girl,* VOGUE (September 2012), annexed as Exhibit "I," page 808.

Ms. Germanotta admits that it is possible that Ms. O'Neill did occasionally work at the quick change (Exhibit "G," *supra* page 162) .  Ms. Germanotta's concession was corroborated by the tour manager Wendi Morris, who testified that Ms. O'Neill worked at the quick change "from time to time." *See* Exhibit "H," *supra* at page 40.

Ms. O'Neill's presence at the quick change is also referenced in scattered emails throughout her tenure. *See* emails dated February 18, 2010; February 24, 2010; April 3, 2010; July 17, 2010; and November 7, 2010, annexed collectively as Exhibit "B."  However, when Ms. O'Neill was with Ms. Germanotta directly assisting her, she generally had little opportunity to send emails. *See* O'Neill Decl. ¶ 6.  Thus, there would be fewer email correspondence to document those periods when she was indisputedly "working."

Consequently, the extent to which Ms. O'Neill participated in the quick change is one of the hotly-disputed factual issues in this matter and accounts for much of the disputed overtime, and can be better resolved through the review of photographs taken simultaneous to Ms. O'Neill's work.

**B.**     **Mr. Richardson Has Not Sustained His Burden of Undue Hardship**

Mr. Richardson's claim of undue hardship is unfounded.

"Once the party issuing the subpoena has demonstrated the relevance of the

8

requested documents, the party seeking to quash the subpoena bears the burden of demonstrating

that the subpoena is over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs. v.*

*Pricewaterhouse–Coopers LLP*, 2008 WL 4452134 (S.D.N.Y. 2008) (*citing Sea Tow Int'l, Inc. v.*

*Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y.2007)); *see also GMA Accessories, Inc. v. Electric*

*Wonderland, Inc.*, 2012 WL 1933558, *5 (S.D.N.Y. 2012).  Mr. Richardson claims undue

hardship, but has not articulated the burden imposed in producing the photographs, much less

sustained his burden necessary to quash the subpoena.

      A party responding to a subpoena is required to produce documents as they are

kept in the ordinary course of the party's business. Fed.R.Civ.P. 45(d)(1)(A).  Mr. Richardson

does not address what efforts he would have to make to retrieve the photographs in their digital

form.  It is presumed that while Mr. Richardson may have printed some of thousands of

photographs at issue, most remain in their digital form and are stored on a computer, tablet or

other electronic device.  It is also presumed that a professional such as Terry Richardson, who

has shot, *inter alia*, advertising campaigns for the upscale gym company Equinox (*see* Exhibits

"J" and "K"), keeps his digital images corresponding with his different clients in an organized

fashion in at least one computer file folder.  Mr. Richardson's silence on how the digital images

are maintained and why their production would be so burdensome is deafening.

      The subpoena requests the photographs in digital form, and specifically does not

request that Mr. Richardson take the time to print the thousands of images involved.  The

production can undoubtedly be completed in less than five minutes, by transferring the images

from a file folder to a flash drive.  Little if any time will therefore have to be expended in

preparing the photos for production. *See e.g. Stickels*, *supra* (no significant burden resulting from

the compelled disclosure of the photos where, *inter alia*, the negatives had already been printed, so no additional time would have to be spent in preparing them).  Under these circumstances, the probative value of the photographs far outweighs the burden of production on Mr. Richardson. *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty.").

**C.     No Privacy Concerns are Not Implicated by Discovery of the Photographs**

Defendants' asserted privacy concerns are transparently fabricated, and in any event the Protective Order which governs this case protects Ms. Germanotta.

At the outset, it bears noting that ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.  Personal rights may include "the individual interest in avoiding disclosure of personal matters." *McVane v. FDIC (In re McVane),* 44 F.3d 1127, 1136 (2d Cir. 1995) (citations omitted).

Although it is purportedly Mr. Richardson who brought this motion to quash, he is represented by Defendants' counsel, as was every witness deposed during discovery.  Thus, Defendants make sure to emphasize Ms. Germanotta's standing to protest the subpoena, as they must since it is clear that Ms. Germanotta is bothered by it, and, as set forth above, complying with the request does not result in any undue burden to Mr. Richardson.

In any event, it is true that "[i]ndividuals may ... be entitled, under the appropriate circumstances, to have a subpoena for such information quashed or modified to protect them

10

from undue annoyance, embarrassment or oppression, as provided by Rule 26(c), Fed.R.Civ.P."

*Sierra Rutile Ltd. v. Katz*, 1994 WL 185751, *2 (S.D.N.Y. 1994).  The determination involves a

balance of the information sought against the intrusion on the objecting person's privacy

interests. *Id*; *see also Griffith v. U.S.*, 2007 WL 1222586, *4 (S.D.N.Y. 2007); *Carey v. Berisford

Metals Corp.*, 1991 WL 44843, *8 (S.D.N.Y. 1991).

Defendants assert in conclusory fashion that the subpoena served on Mr.

Richardson violates Ms. Germanotta's privacy rights.  In his declaration, Mr. Richardson

contends that "[m]any of the [unpublished] photographs taken of Ms. Germanotta were taken in

private and intimate settings such as in her bedroom or hotel suite, and are private and personal

to her." Richardson Decl. ¶ 11.  Ms. Germanotta does not supply any declaration on the subject.

The fatal flaw of Defendants' argument is that the parties entered into a

Confidentiality Agreement. *See* Exhibit "F," *supra*.  Consequently, any concern about the

production of the unpublished photographs is nullified by the terms of that document.

In any event, Defendants' assertion is wholly untenable.  A review of the

photographs which *were* published in the book *Lady Gaga X Terry Richardson* show Ms.

Germanotta in private and intimate settings such as in her bedroom or hotel suite.  Annexed as

Exhibit "L" is a small sampling of photos published in the book, consisting of:

- Ms. Germanotta's naked torso with solely her hands on her breasts while in bed

- Ms. Germanotta on the floor with her legs spread open and a hole in the crotch part of her fishnet stockings

- Ms. Germanotta wearing a shower cap and smoking a cigarette

- Ms. Germanotta's breasts while putting on her "meat dress"

- Ms. Germanotta seemingly passed out on a kitchen floor next to her meal

- Ms. Germanotta's usage of a nebulizer with a breast revealed underneath fishnet material

- Ms. Germanotta in her bra and thong brushing her teeth and using mouthwash

- Ms. Germanotta half asleep in bed, and drinking milk in her bra and thong and not wearing any make-up

- Ms. Germanotta doing yoga in her underwear with a see-through bra

- Ms. Germanotta laying down during yoga in her underwear with a see-through bra, and clearly no make-up

- Ms. Germanotta spitting beer into the jacuzzi in which she is sitting naked

- Ms. Germanotta receiving hydration intravenously

More recently, Ms. Germanotta has been photographed making out with her boyfriend naked in a pool (*see* Exhibit "M"), and, within the past week alone, getting her head tattooed live onstage (*see* Exhibit "N"), possibly publicly urinating into a champagne bucket (*see id.*), and smoking pot onstage in Amsterdam (*see* Exhibit "O"). As was explained in her recent interview with <u>Vogue</u> (September 2012):

> Can she ever enjoy a private moment outside? "I'm a complete free spirit, so, even though you don't see it, I still find time to have sex at night on the beach when no one's around. Or roll into a bar and get fucked up and dance with my top off. It's just that no one ever sees that, ... .  Or, I shouldn't say that. **I don't worry about people seeing any of those things**; it's just that I'm less inclined to do them if there's tons of people around. **I like to have private moments, but in public!** Where I can feel a little irresponsible and act like I am nineteen."

Exhibit "I," *supra* at page 808 (emphasis added).

Thus, more than any other celebrity, Ms. Germanotta intentionally engages in

12

private behavior in public, leaving nothing to the imagination.  The suggestion that Ms.

Germanotta should now be protected from undue annoyance, embarrassment or oppression, as

provided by Rule 26(c), is ludicrous.  At the very least, in light of what Ms. Germanotta has

already divulged to the world, Ms. O'Neill's interest in the probative photographs outweighs Ms.

Germanotta's privacy rights. *See Sierra Rutile Ltd., supra* at *3 (where a subpoena was served

upon banks and financial institutions demanding all documents in their possession for an eight-

year period documenting all securities and other financial transactions, credit files, guaranties,

correspondence and internal memoranda, applications and mortgages, of plaintiff's principal, his

wife, their children and other family members, while the subpoena implicated some privacy

interests, they appeared to be relatively modest in light of the information which the principal had

already produced without objection, including personal tax returns and personal financial

statements); *see also Griffith v. U.S.*, 2007 WL 1222586, *4 (S.D.N.Y. 2007) (where plaintiff

commenced the action to quiet title to real property, the Government's interest in plaintiff's

American Express account records outweighed plaintiff's husband's privacy rights where the

husband's failure to pay approximately $2.5 million in federal income taxes precipitated the

Government's filing of a Notice of Federal Tax Lien, plaintiff's resulting action to quiet title, and

the Government's subsequent attempt to seek the husband's financial records in an effort to

defend against plaintiff's suit).

      Insofar as this Court would consider limiting the production of the photographs

to only those including Ms. O'Neill, Mr. Richardson's objection to even that suggestion is

without basis.  Mr. Richardson avers:

      13.    The photographs that were taken during this time period are not searchable by

image content. Searching through the photographs for particular images would take weeks.

14.    There is no way to easily locate photographs containing Jennifer O'Neill without searching through all of the photographs that I took when with Ms. Germanotta, which includes tens of thousands of pictures.

Richardson Decl. ¶ 14.  However, Mr. Richardson does not address why the facial recognition software such as Apple's iPhoto photo organizer, Google's Picasa digital image organizer, Sony's Picture Motion Browser and Windows Live Photo Gallery would be insufficient.

In any event, production of all of the photographs involving Ms. Germanotta and her tour for the relevant time period would be more reliable, and in view of the foregoing, it is respectfully submitted that there is no justification for limiting or denying their production.

**D.**    **Defendants Do Not Claim Any Prejudice for Receiving Notice of the Subpoena at or About the Time it Was Served**

In a footnote (MOL at 1, fn. 2), Defendants complain that they did not receive notice of the subpeona duces tecum in accordance with a strict reading of Fed.R.Civ.P. 45(b)(1). That notwithstanding, Defendants' failure to assert any prejudice resulting from not receiving notice in advance of the subpoena's issuance renders their contention academic.

The prevailing authority requires that the party aggrieved for receiving insufficient prior notice of a subpoena duces tecum demonstrate some form of prejudice resulting from the failure to provide advance notice. *See, e.g., Malinowski v. Wall Street Source, Inc.,* 2010 WL 4967474, *2 (S.D.N.Y. 2010) (defendants' provision of notice of the subpoena one business day following its service was not a basis to quash it); *Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP,* 2008 WL 4452134, **3-4 (S.D.N.Y. 2008) (although one

defendant was served with notice one day after the non-party was served, and the remaining defendants were served with notice seven days after the non-party was served, the defendants failed to sufficiently show prejudice to justify quashing the subpoena); *Fox Indus. Inc. v. Gurovich*, 2006 WL 2882580, *11 (E.D.N.Y. 2006) (denying the motion to quash because the defendants were not prejudiced by plaintiff's failure to provide prior notice); *Zinter Handling, Inc. v. Gen. Elec. Co.*, 2006 WL 3359317, *2 (N.D.N.Y. 2006) (same); *Seewald v. IIS Intelligent Information Sys., Ltd.,* 1996 WL 612497, *5 (E.D.N.Y. 1996) (denying motion to quash because the defendants learned about the document request prior to the third party's production of the documents and consequently had sufficient time to challenge the subpoena).

Defendants do not assert or even suggest that they were prejudiced for failing to receive notice of the subpoena on Mr. Richardson before he was served, versus within the few hours on the same day that they did receive notice.  Obviously, Defendants were afforded an adequate opportunity to object to the production of the photographs, as was the concern expressed in the 1991 Advisory Committee Notes to Fed.R.Civ.P. 45(b)(1). *See Kingsway Financial Services, Inc., supra*, at *3.  Accordingly, Defendants' mention of the subject is a red herring and not a basis to quash the subpoena.


**E.**     **There is No Basis for an Award of Attorneys' Fees to Defendants**

Defendants' request for attorneys fees is invalid on its face and should be denied outright.

Under extreme circumstances, the Court is authorized to impose sanctions on the party or attorney responsible for issuing the subpoena under the Rule where such party or

attorney breaches his duty to "take reasonable steps to avoid imposing undue burden or expense on [the] person subject to that subpoena." David D. Siegel, Practice Commentary C45-20, 28 U.S.C.A., Fed. R. Civ. P. 45; *see e.g. Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at **8-9 (S.D.N.Y. 2003) (sanctions where subpoena improperly issued to obtain information for another proceeding and not withdrawn).

The subpoena served on Mr. Richardson is a legitimate discovery device served in an effort to obtain relevant discovery, and the pursuit of such evidence is clearly in good faith. Further, Ms. O'Neill sought to limit the burden or expense on Mr. Richardson by specifically asking for the photographs in digital or other electronic format, which would render the photographs easily transferable.

On the other hand, there exists authority that Ms. O'Neill is entitled to attorneys' fees if the motion to quash is opposed successfully, unless the court finds that the losing party was justified substantially in making the motion or that an award otherwise would be unfair. *U.S. E.E.O.C. v. Dillard's, Inc.*, 2008 WL 2473852 (M.D. Fla. 2008); *In re Healy*, 2008 WL 94106 (Bankr. E.D. Cal. 2008); *Ceramic Corp. of America v. Inka Maritime Corp.*, 163 F.R.D. 584 (D.C. Cal. 1995). It is respectfully submitted that in view of the foregoing, there was no justification whatsoever to move to quash the subpoena seeking the relevant photographs, and award of attorneys' fees to Ms. O'Neill would most certainly be very fair.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court deny

Defendants' motion in its entirety, and grant such other and further relief as it deems proper.

Dated:  September 21, 2012
       New York, New York

Respectfully submitted,

SNITOW KANFER HOLTZER
& MILLUS, LLP

By:  _Virginia K. Trunkes_
      Virginia K. Trunkes (VT 8642)
      575 Lexington Avenue
      New York, New York 10022
      (212) 317-8500
      *Counsel for Plaintiff Jennifer O'Neill*

Of Counsel,

   Paul F. Millus
   Virginia K. Trunkes

M:\CLIENT\436\Defendants' motion to quash\MOL.wpd

17