C9DMONEC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JENNIFER L. O'NEILL,

             Plaintiff,

         v.                              11 Civ. 9128 (PGG)

MERMAID TOURING, INC. and
STEFANI GERMANOTTA,

             Defendants.
------------------------------x
                                         New York, N.Y.
                                         September 13, 2012
                                         2:30 p.m.

Before:

                    HON. PAUL G. GARDEPHE,

                                         District Judge

                         APPEARANCES

SNITOW KANFER HOTZER & MILLUS
     Attorneys for Plaintiff
BY:  PAUL F. MILLUS
     VIRGINIA K. TRUNKES

PROSKAUER ROSE
     Attorneys for Defendants
BY:  STEVEN D. HURD
     BRIAN J. GERSHENGORN
```

C9DMONEC

1               (Case called)
2               MR. MILLUS:  Paul F. Millus, Snitow Kanfer Holtzer &
3     Millus.
4               MS. TRUNKES:  Virginia Trunkes, also from Snitow
5     Kanfer Holtzer & Millus for the plaintiffs.
6               MR. HURD:  Steven Hurd and Brian Gershengorn on behalf
7     of defendants from Proskauer Rose.
8               THE COURT:  This is a status conference in this case.
9     The parties have sent correspondence to me which raises the
10    following issues:
11              First of all, defendants indicate they wish to file a
12    motion for partial summary judgment.
13              Secondly, defendants have asked me to impose sanctions
14    against plaintiff's counsel for violation of the protective
15    order.
16              Third, there is a motion to quash the subpoena served
17    by the plaintiff on a photographer.
18              These are the matters I intend to address at the
19    conference today.  Let me begin with the proposed motion for
20    partial summary judgment.  Let me ask defense counsel, I assume
21    you are not suggesting seriatim summary judgment motions but
22    this will be your summary judgment motion.  Am I correct?
23              MR. HURD:  That is correct, your Honor.
24              THE COURT:  What is the status of discovery outside of
25    the issue about the subpoena to the photographer?  Are there

1    any other outstanding issues?
2             MR. HURD:  None from defendant, your Honor.
3             MR. MILLUS:  There are quite a few from plaintiff's
4    standpoint, your Honor.
5             There is a binder that we have requested.  It was
6    reviewed by the witness prior to her deposition,
7    Ms. Germanotta.  She relied on it during the course of her
8    testimony.  We called for its production.  We understand a
9    response, whatever that response will be, will come in next
10   week.  Therefore, that is still an open matter.  We don't know
11   what the outcome is going to be.
12            In addition, your Honor, Ms. Germanotta gave an
13   interview to Vogue magazine.  In that interview I alluded to
14   one of the statements made in one of my letters to your Honor
15   that I believe go to Ms. Germanotta's credibility.  We sent a
16   request for admissions last week just to admit that these
17   statements in fact were made to the author, so there is no
18   issue.
19            We also notified the parties that if there is an
20   issue, we are adding the author's name to our witness list
21   under Rule 26 just in case we had to call the reporter at trial
22   to verify that the statements were made which we believe go
23   directly to Ms. Germanotta's credibility, which will also be an
24   important component of this, as she is the primary witness
25   against my client in terms of the work that was performed and

1   the hours.
2         That's outstanding insofar as discovery is concerned,
3   in addition to the motion to quash that pertains to the
4   photographs that we seek to have produced.
5         One other matter, your Honor.
6         MS. TRUNKES:  There may be an electronic discovery
7   issue as well.
8         MR. MILLUS:  I apologize, your Honor.  There was an
9   account, House of Gaga e-mail account, that we have been trying
10  to find out information on.  We have been told that it was
11  destroyed, whatever that means, shortly after our client's
12  termination.
13        The problem is is that under the law I think we have
14  to know that what efforts were made, how it was destroyed, is
15  it recoverable, because we all know that you may try to destroy
16  an e-mail account, but it doesn't necessarily go that route.
17  We have been in the middle of some correspondence -- we have
18  not gotten a response to our last letter to counsel --
19  regarding what the status of it is.  We believe we have a
20  credible case to demonstrate that they do have to do more than
21  simply tell us that an e-mail account that may have pertinent
22  e-mails relative to my client's work history was simply
23  destroyed.  We need more information on that and we have
24  requested it, have not received a response yet.
25        Those are the outstanding issues from our standpoint,

1    your Honor.
2            THE COURT:  The discovery deadline was September 4.
3    It's now September 13.  So whatever the outstanding issues, and
4    I am going to address the motion to quash in just a moment, but
5    with respect to the other issues that have been alluded to,
6    they need to be wrapped up very quickly because what I want to
7    have happen here, it seems to me, based on the correspondence
8    that I have gotten, that there is a fundamental legal issue
9    that needs to be resolved, and I would like to schedule that
10   for briefing, and I'd like to get the briefing in as soon as
11   possible because it seems to me if a legal issue can be
12   resolved, it may well permit the parties to reach a negotiated
13   settlement here.
14           We will talk in a moment about what would be an
15   appropriate briefing schedule on the proposed motion, but I
16   just wanted to tell you that where this is going is, I want
17   discovery completed and completed quickly so that we can go
18   into briefing on a legal issue that's been presented so that I
19   can resolve that.
20           With respect to the motion to quash, I am not going to
21   strike the motion to quash.  The motion to quash does not
22   violate my rules because I have special rules for discovery
23   motions, and this is in the nature of a discovery dispute.
24           What I will say about the motion, which the plaintiff
25   has not yet responded to, is it's highly unlikely that I am

1    going to order a photographer to turn over tens of thousands of
2    images that he took.  Is it a he or she?  Is it Terry?
3             MR. HURD:  It's a he.
4             THE COURT:  That he took while he was, I guess,
5    touring with Ms. Germanotta.
6             I don't say that to discourage you, Mr. Millus, from
7    pursuing the matter, but I just want you to know that it seems
8    to me it imposes enormous burden on the nonparty to the case.
9    And if that's where this is headed, it's unlikely I am going to
10   tell the photographer to produce tens of thousands of images.
11   He represents that he can't search for whatever it is you might
12   be looking for.  So at present it seems like it would put an
13   enormous burden on him.  You're welcome to brief the matter,
14   but that's my initial reaction.
15            MR. MILLUS:  Your Honor, if I may make one statement
16   regarding that.  I appreciate that point.  Our position is,
17   obviously, they failed to keep records, so in some respects
18   it's their burden to demonstrate that we are incorrect when my
19   client says she worked the hours she worked.
20            However, issues were raised during the course of Ms.
21   Germanotta's testimony whereby she said my client was not
22   available.  My client was not present during such things as
23   quick changes during the show.
24            And the thing is, Ms. Germanotta always had the
25   photographer around taking thousands of pictures.  If they are

1   going to stand there and say, she wasn't around, I'd like to be
2   able to rebut that with anything that I can.  Obviously, a
3   snapshot is a moment in time, but there may be many moments in
4   time because I'm sure the photographs are dated, timed.  That's
5   what happens digitally.  I am not quite sure I necessarily
6   agree at this point because I don't know how difficult it would
7   be to produce digital photographs.  I'm not talking going
8   through a book.  We are talking about something that's on a
9   computer.  And unless they demonstrate otherwise, I still think
10  we have a viable discovery demand there.
11          THE COURT:  When can you get in your opposition to the
12  motion to quash?
13          MR. MILLUS:  Two weeks, your Honor, if that's
14  acceptable.
15          THE COURT:  No quicker than that?  Because the more we
16  spend time on these matters --
17          MR. MILLUS:  By next Friday, your Honor.
18          THE COURT:  That will bring us to September 21.  Then
19  is the defendant or, I should say, counsel for Mr -- is it
20  Mr. Richardson, want to put in a reply?
21          MR. HURD:  I believe so, your Honor, but it would be
22  short.  Maybe if we could have ten days.
23          THE COURT:  How about a week.  9/28.  Reply due on
24  9/28 and the opposition on 9/21.
25          On the motion for sanctions I've looked at the papers

1   and I guess let me say for the record what the issue is.  I
2   received a letter from defense counsel dated September 6 in
3   which counsel alleges that Mr. Millus, plaintiff's counsel,
4   violated the terms of the protective order in this case by
5   giving an interview in which he allegedly made some disclosures
6   about Ms. Germanotta's deposition.  And specifically the letter
7   from defense counsel states that Mr. Millus stated that Ms.
8   Germanotta had indicated that she would like to contest the
9   matter in court, that based on her deposition he believed the
10  case, that is to say the plaintiff's case, was strong, that at
11  this point there is nothing to stop it from going to trial,
12  that is to say, there is nothing to stop the case from going to
13  trial.  And then finally defense counsel points out that the
14  article states that Ms. Germanotta "swapped the stage for the
15  stand in a six-hour videotaped deposition."  Let me address
16  these alleged disclosures which are claimed to be in violation
17  of the protective order.
18          First of all, let me say that the fact that we have
19  been involved in litigating this case for quite some time now
20  indicates that the defendants, obviously, are contesting it.
21  Otherwise, none of us would be here.  So I don't think that's a
22  news flash.
23          With respect to counsel's statement that based on the
24  deposition he felt plaintiff's case was strong, I don't see
25  that as violating the protective order in the sense I don't

1  believe it reveals any of the content of what was said at the
2  deposition.
3      The comment about at this point there is nothing to
4  stop the case from going to trial has nothing to do with the
5  content of the deposition.
6      Finally, the extent to which the article states that
7  Ms. Germanotta swapped the stage for the stand in a six-hour
8  videotaped deposition, I suppose that could be read to suggest
9  that plaintiff's counsel told the reporter that the deposition
10 lasted six hours, but, again, even assuming he said that, I
11 just don't see that as violating the protective order in the
12 sense --
13     MR. MILLUS:  Your Honor, may I add for the record --
14     THE COURT:  Can I finish?
15     MR. MILLUS:  I apologize.
16     THE COURT:  I don't see that as disclosing any of the
17 content of the deposition.
18     Go ahead.
19     MR. MILLUS:  I'm sorry, your Honor.  I do apologize.
20     Just for the record, all I told the reporter was the
21 deposition took about six hours.  I didn't make any comment
22 regarding it, just that it took about six hours.
23     THE COURT:  In any event, with respect to the remarks
24 about which defense counsel complains, I don't find them to
25 have been a violation of the protective order.  Let me make

1   another comment, which is, I don't want the case tried in the
2   press.  This is sort of nibbling around the protective order.
3   I don't find it to be in violation of the protective order, but
4   I would be very disturbed if it went beyond what's alleged.  So
5   I am going to ask counsel for both sides to make sure that they
6   are in compliance with the protective order so that we don't
7   have this issue reemerge.  But for present purposes the request
8   for sanctions against plaintiff's counsel is denied.
9           Now, let's talk about what might be an appropriate
10  schedule for the motion for partial summary judgment.  In light
11  of the discovery issues that apparently need to be worked out,
12  as well as the issue of the motion to quash, what schedule
13  would make sense for briefing on the motion for partial summary
14  judgment?
15          MR. HURD:  Your Honor, we are prepared to ask for four
16  weeks, but we thought four weeks from today.  If we want to
17  resolve those issues first, I would say four weeks from
18  whatever date you pick to have those issues resolved.
19          THE COURT:  Briefing on the motion to quash is going
20  to take us through September 28.  Why don't we add to that
21  schedule that to the extent you are not able to work out your
22  other discovery issues, whatever they might be, that the
23  briefing on that will also be concluded by September 28.  I
24  will then try to expeditiously resolve all those issues.  Why
25  don't we assume for present purposes that the discovery issues

1    will be resolved by, say, October 12.

2            With that as a deadline for me to resolve whatever the
3    issues are, I suppose in the event I reached a resolution that
4    would require additional discovery, that might require some
5    alteration, but for present purposes let's assume the discovery
6    issues have been resolved and whatever additional discovery
7    needs to take place has happened by October 12. If for some
8    reason it doesn't prove true, we can amend the schedule. For
9    present purposes let's assume everything is resolved by October
10   12. Four weeks from that?

11           MR. HURD: Yes, your Honor, that would be good.

12           THE COURT: That would bring us to November 9. And
13   how long does the plaintiff want for opposition?

14           MR. MILLUS: To the motion for summary judgment, your
15   Honor?

16           THE COURT: It would be partial summary judgment.

17           MR. MILLUS: I look to my colleague. I never like to
18   make these decisions without looking to my colleague as well.

19           THE COURT: Because she is actually going to have to
20   do the work.

21           MR. MILLUS: Pretty much, your Honor. But I am
22   involved.

23           I guess with Thanksgiving coming up, what are we
24   saying, your Honor? When would the motion be made?

25           THE COURT: November 9 would be the date for the

C9DMONEC

1  moving papers.
2              MR. MILLUS:  We can get it in before Thanksgiving.
3              THE COURT:  You want to get it in before Thanksgiving?
4              MR. MILLUS:  I think that's the better move, quite
5   frankly.
6              MS. TRUNKES:  Let's see how early Thanksgiving is.
7              THE COURT:  Thanksgiving is the 22nd, so it is
8   actually pretty early this year.
9              MR. MILLUS:  A week after, your Honor.
10             THE COURT:  Why don't we say November 30.
11             How long do the defendants want to respond?
12             MR. HURD:  Two weeks.
13             THE COURT:  That will bring us to the 14th.
14             We will issue an order with all these dates for the
15  briefing on the motion for summary judgment.
16             I would ask you, if you reach a point where you have
17  any impasse on these discovery matters to bring them to me,
18  consistent with my individual rules, as soon as you possibly
19  can and I'll likely set up a telephone conference and try to
20  resolve the matter over the phone with you.  But I don't want
21  it to hold up the case.  So I encourage you to work it out
22  between yourselves, obviously.  But if you can't, don't delay
23  it raising it with me because I want to address it so that the
24  case can move forward.
25             Anything else we should talk about today?

C9DMONEC

1        MR. HURD:  Not from defendants.

2        MR. MILLUS:  Not from plaintiffs, your Honor.

3        THE COURT:  Thank you.

4                            o0o