UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JENNIFER L. O'NEILL,                :     Case No. 11-Civ-9128 (PGG)

              Plaintiff,    :

   -against-                 :

                       :

MERMAID TOURING INC. AND
STEFANI GERMANOTTA, a/k/a/   :
"LADY GAGA,"

                       :

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SANCTIONS

Virginia K. Trunkes, Esq.
SNITOW KANFER & HOLTZER, LLP
575 Lexington Avenue, 14th Floor
New York, New York 10022
(212) 317-8500

*Attorneys for Jennifer L. O'Neill*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MS. O'NEILL'S FORENSIC ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    POINT I -   DEFENDANTS VIOLATED THEIR DISCOVERY
                OBLIGATIONS BY MISREPRESENTING THAT
                THEY DID NOT POSSESS ANY ADDITIONAL
                EMAILS RECEIVED BY MS. O'NEILL IN HER
                HAUSOFGAGA.COM ACCOUNT . . . . . . . . . . . . . . . . . . . . . . . . . 11

                Rigorous Obligations Accompany Disclosure
                and Production of Electronically Stored Information . . . . . . . . . 11

                Defendants' Document Responses Were False,
                Misleading and Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    POINT II -  SANCTIONS IN THE FORM OF PROHIBITING
                DEFENDANTS FROM OPPOSING MS. O'NEILL'S
                CLAIMS AND REQUIRING PAYMENT FOR HER
                REASONABLE EXPENSES ARE APPROPRIATE . . . . . . . . . . . . . . 15

                Defendants' Failure to Comply with the Discovery
                Rules was Willful, Continued for the Duration of
                Discovery and There Was No Adequate Explanation
                for Noncompliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                Lesser Sanctions Would Not Be Effective . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

**Page(s)**

*Agiwal v. Mid Island Mortg. Corp.,*
  555 F.3d 298 (2d Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Am. Stock Exch., LLC v. Mopex, Inc.,*
  215 F.R.D. 87 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bank of Mongolia v. M & P Global Financial Services, Inc.,*
  258 F.R.D. 514 (S.D. Fla. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Blauinsel Stiftung v. Sumitomo Corp.,*
  2004 WL 287179, at *1-2 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chambers v. NASCO, Inc.,*
  501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) . . . . . . . . . . . . . . . . . . . . 15, 17

*Chen-Oster v. Goldman, Sachs & Co.,*
  2012 WL 3964742, **7-10 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Design Strategy, Inc. v. Davis,*
  469 F.3d 284 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*DLC Management Corp. v. Town of Hyde Park,*
  163 F.3d 124 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 21

*Gucci Am., Inc., v. Gucci,*
  2009 WL 440463, *5 (S.D.N.Y 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Haas v. Del. & Hudson Ry. Co.,*
  282 F.App'x 84 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Delta/AirTran Baggage Fee Antitrust Litigation,*
  846 F.Supp.2d 1335 (N.D. Ga. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re September 11th Liability Ins. Coverage Cases,*
  243 F.R.D. 114 (S.D. N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Invision Media Commc'ns, Inc. v. Fed. Ins. Co.,*
  2004 WL 396037, *9 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ii

*Kosher Sports, Inc. v. Queens Ballpark Co.*,
    No. 10–CV–2618, 2011 WL 3471508, at *12 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . 16, 18

*Lodge v. United Homes, LLC*,
    787 F.Supp.2d 247 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lujan v. Cabana Management, Inc.*,
    284 F.R.D. 50 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McPeek v. Ashcroft*,
    202 F.R.D. 31 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Metro. Opera Ass'n v. Local 100, Hotel Employees & Rest. Employees Int'l Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Monaghan v. SZS 33 Associates, L.P.*,
    154 F.R.D. 87 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pierce v. Underwood*,
    487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) . . . . . . . . . . . . . . . . . . . 15

*Reilly v. Natwest Markets Group Inc.*,
    181 F.3d 253 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Richmond v. General Nutrition Centers Inc.*,
    2012 WL 1658299, *3 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rofail v. U.S.*,
    227 F.R.D. 53 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Robbins & Meyers*,
    274 F.R.D. at 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*S. New England Tel. Co. v. Global NAPs Inc.*,
    624 F.3d 123 (2d Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*,
    272 F.R.D. 350 (W.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Travel Sentry, Inc. v. Tropp*,
    669 F.Supp.2d 279 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tse v. UBS Fin. Servs., Inc.*,
    568 F. Supp. 2d 274 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Gotti*,
    322 F.Supp.2d 230 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Update Art, Inc. v. Modiin Pub., Ltd.*,
    843 F.2d 67(2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
    694 F.3d 155 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

29 U.S.C. § 213 (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 213 (f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fair Labor Standards Act, 29 U.S.C.§§ 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York State Labor Law §§ 190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York State Labor Law §§ 195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## RULES

Advisory Committee Note, Fed.R.Civ.P. 26 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Fed.R.Civ.P. 26, advisory committee's note (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed.R.Civ.P. Rule 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Civ.P. Rule 26(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed.R.Civ.P. Rule 26(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed.R.Civ.P. Rule 26(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 13, 14, 15, 16

iv

Fed.R.Civ.P. Rule 26(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. Rule 26(g)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Fed.R.Civ.P. Rule 26(g)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed.R.Civ.P. Rule 26(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19

Fed.R.Civ.P. Rule 34(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed.R.Civ.P. Rule 37(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. Rule 37(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 20

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SANCTIONS**

Plaintiff Jennifer L. O'Neill submits this memorandum of law in support of motion for an Order pursuant to Fed. R. Civ. P. Rules 26(g) and 37(c)(1) precluding Defendants Mermaid Touring Inc. and Stefani Germanotta, a/k/a "Lady Gaga" from opposing Ms. O'Neill's claims regarding the amount of hours she worked per day, and awarding Plaintiff reasonable expenses including attorneys' fees.

**PRELIMINARY STATEMENT**

From February 5, 2010 through March 7, 2011, Plaintiff Jennifer O'Neill served as the personal assistant to Defendant Stefani Germanotta, a/k/a "Lady Gaga," as the latter's career skyrocketed. In addition to handling myriad personal matters for Ms. Germanotta, Ms. O'Neill was the intermediary for, *inter alia*, vendors, designers, stylists, crew members, yoga instructors, voice coaches, nutritionists, physicians, fans and even close family members who sought to communicate with Ms. Germanotta. The primary mode was email, and if the email was not sent solely to Ms. O'Neill, then she would usually be a "copied" recipient of a message sent to Ms. Germanotta to ensure that the communication reached her. As Ms. Germanotta's career crescendoed, so did the volume of emails.

Ms. O'Neill brought this lawsuit for unpaid overtime wages to compensate for the hours during which she worked non-stop for the international superstar. She has attempted to gather documentary evidence to demonstrate the number of hours she worked each day over the subject time period. As part of the recognized discovery process, she is entitled to all relevant evidence regarding her claims, including the emails sent to and from her in Defendants' "company" email account.

In fact, emails sent and received by an employee through her employer's corporate email account comprise unequivocal evidence of the extent to which the employee was "working" or "on call" during the period of her employment. These emails may not necessitate explanatory testimony, and thus can *per se* establish the hours worked.

There are clear obligations in responding to requests for discovery generally, and for electronic discovery specifically. Defendants flouted those obligations. Although Defendants did produce some emails which were sent from or were sent to Ms. O'Neill's corporate account, as elaborated below, Defendants misrepresented that they did not possess any additional emails received by Ms. O'Neill in that corporate account. The additional emails which were not produced were as easily accessible to Defendants as those which were produced. This is reflected in the carefully crafted wording of Defendants' response to Ms. O'Neill's request, and confirmed by a subsequent forensic recovery of many of the subject emails.

The reason for Defendants' transparent withholding of emails is that they would only assist Ms. O'Neill in proving her claims. That is not "consistent with the spirit and purposes" of liberal discovery as envisioned by the Federal Rules of Civil Procedure.

Consequently, sanctions are appropriate. Defendants should not only be prohibited from using the emails they did produce to support their defenses, but they should be precluded from opposing Ms. O'Neill's claims about the amount of hours she worked per day, and they should be compelled to pay for Ms. O'Neill's reasonable expenses, including attorney's fees, incurred as a result of their misconduct. This conclusion is founded in the clear Federal Rules of Civil Procedure and the ample case precedent interpreting the Rules, and is warranted by Defendants' unmistakable and deliberate efforts to inhibit Ms. O'Neill's ability to prove her case.

**BACKGROUND**

Plaintiff Jennifer O'Neill was the personal assistant for international superstar Stefani Germanotta, the principal and Chief Executive Officer of Defendant Mermaid Touring, Inc., from, in relevant part, February 5, 2010 through March 7, 2011. Annexed as Exhibit "A" is the Amended Complaint dated June 7, 2012, ¶ 1. This lawsuit is based on Defendants' failure to pay overtime and premium wages in violation of the Fair Labor Standards Act, as amended, 29 U.S.C.§§ 201 *et seq.* ("FLSA") and the New York State Labor Law, §§ 190 *et seq.* ("NYSLL").

During most of the period while Ms. O'Neill served as Ms. Germanotta's personal assistant, she was the only person who served in this capacity. In general, she bore sole responsibility for Ms. Germanotta's daily personal and work-related needs and was "on call" "24/7." *Id.*, ¶ 16. More specifically, Ms. O'Neill's duties included but were not limited to waking up Ms. Germanotta every day, keeping Ms. Germanotta on schedule, assisting with her "quick change[s]" at the evening concerts and continuing multitudinous tasks throughout the night after Ms. Germanotta went to sleep. *Id.*, ¶¶ 16-17, 19; *see also* various emails annexed together in Exhibit "B." She communicated much of the details of these and other daily events to third parties concerned about Ms. Germanotta's welfare or her whereabouts. *See* Exhibit "B."

Notwithstanding this rigorous and inflexible scope of responsibilities, Ms. O'Neill was not formally provided with official "time off."[1] Exhibit "A," ¶ 19. Indeed, at her deposition, the tour manager confirmed that a "good" personal assistant to a star celebrity "has to be available ... whenever that star needs them." *See* Morris Deposition, page 18, annexed as Exhibit "C." Ms. O'Neill was better than the "good" personal assistant described by Defendants' tour

---

[1]    Ms. O'Neill acknowledges that she received approximately one month of "vacation" in January 2011, during which she did in fact work, but has not sought overtime.

manager; she served at Ms. Germanotta's "beck and call" and attended to her every need.

Defendants ran afoul of 29 CFR Part 516 and New York Labor Law § 195 by not maintaining time records *(see* Defendants' Response to Request to Admit No. 11, annexed as Exhibit "D"). Absent time records, Ms. O'Neill can only corroborate her claim that she worked hours in excess of forty (40) hours per week and was therefore entitled to overtime and premium wages through testimony and any other documentary evidence, specifically emails.

Emailing was the standard method of communication for Ms. O'Neill's employment. (In cameo photographs, nearly every young celebrity is shown with a smart-phone in hand while they email, text and tweet.) The voluminous emails which were sent by and to Ms. O'Neill, Ms. Germanotta and other employees will establish what the missing time cards would have had stated had they been properly maintained – that Ms. O'Neill worked far in excess of forty hours per week during her tenure.

At the outset of her employment, Ms. O'Neill utilized her personal email account to communicate with Ms. Germanotta and others. On December 7, 2010, however, Ms. O'Neill was provided with and began using the email account jennifer@hausofgaga.com. While many people continued to send emails to Ms. O'Neill's personal account, forming much of the production of the emails in this case, the hausofgaga.com account was used much more regularly during the latter period of her employment. That period of time – from February 7, 2011 through March 7, 2011 – is particularly germane since Ms. O'Neill worked solely in the United States,[2] and a second personal assistant was now working for Ms. Germanotta due to the meteoric rise of

---

[2]     Pursuant to 29 U.S.C. § 213(f), Ms. O'Neill is not entitled to credit for work performed abroad.

her career and the increased demands on Ms. O'Neill.  Emails during that time period are thus

essential for Ms. O'Neill to respond to Defendants' contention that she could not have worked

overtime during the period when there was a second personal assistant as well.


## DISCOVERY

In their initial Fed.R.Civ.P. Rule 26(a) disclosures, Defendants identified

"[e]mails ... concerning Plaintiff" as among the documents in their possession, custody and

control which they might use to support their defenses. *See* Defendants' Rule 26(a)(1)(A)(ii)

Disclosure in their Rule 26 Initial Disclosures, annexed as Exhibit "E."

In their initial document production, however, Defendants produced only a

handful of emails, i.e., those which responded to Ms. O'Neill's Request No. 3 for documents

which reflected any period of time in which she was completely off-duty during her employment.

*See* Ms. O'Neill's Request No. 3 in her First Request for Documents, annexed as Exhibit "F."

Defendants did not produce any other emails, including any emails in support of their affirmative

defenses, such as the defense that Ms. O'Neill's claims were barred pursuant to 29 U.S.C. §

213(a)(1).

In her Second Request for Documents, Ms. O'Neill expanded her requests and

explicitly sought:

> 20.    Copies of any emails sent by Ms. O'Neill and/or
> *received by Ms. O'Neill* in the hausofgaga.com email
> account.
>
> * * *
>
> 23.    Copies of emails sent from Wendi Morris' email account
> referring, relating to, or concerning Ms. Germanotta's work

5

schedule.

24.     Copies of documents not previously provided concerning Ms. O'Neill's job duties and/or performance of her job duties.

(Italics added.) Annexed as Exhibit "G" are the relevant pages of Ms. O'Neill's Second Request for Documents.

In response to Ms. O'Neill's requests for the emails in her hausofgaga.com account, Defendants' response and production was made in bad faith. In their document responses, annexed as Exhibit "H," although Defendants objected in part on the ground that the request was "overly burdensome and seeks information that is not reasonably accessible and that would be time-consuming and overly burdensome to retrieve and review," *id.*, pp. 5-6, they never raised that objection again, as demonstrated *infra*. Otherwise, Defendants represented simply that Ms. O'Neill's hausofgaga.com account was "not in [their] possession." *Id.*, p. 6 They further stated that they were producing:

non-privileged, responsive emails in hard copy sent to Plaintiff's hausofgaga.com email account from Defendant Germanotta's email account and emails received in Defendant Germanotta's email account from Plaintiff's hausofgaga.com account.

*Id.*, p. 6.

Thus, in response to Ms. O'Neill's request and without seeking a protective order or even a ruling from the Court, Defendants produced limited emails in accordance with their own, unilaterally-chosen terms. The emails they produced were solely those between Ms. O'Neill and Ms. Germanotta. Defendants did not, however, elaborate about the unavailability of emails from Ms. O'Neill's hausofgaga.com account or identify the sources of electronically stored information which were not reasonably accessible because of undue burden or cost, as they are required to under F.R.C.P. Rule 26(b)(2)(B). Nor did Defendants address why they were

6

not producing emails received by both Ms. Germanotta and Ms. O'Neill – via her hausofgaga.com email address – or provide any explanation as to the whereabouts of those emails.

   With respect to Ms. O'Neill's other requests, Defendants represented that they were providing responsive documents, including to Request No. 23, i.e., "[c]opies of emails sent from Wendi Morris' email account referring, relating to, or concerning Ms. Germanotta's work schedule." To that latter request, Defendants claimed to produce "responsive emails sent to Ms. Morris' email account from Defendant Germanotta's email account and emails received in Defendant Germanotta's email account from Ms. Morris' email account."

   With respect to her hausofgaga.com emails, Defendants' narrow response did not make any sense. However, we focused on obtaining the emails in their entirety because it was unclear why additional emails from her hausofgaga.com account were "not in [Defendants'] possession" or otherwise "not reasonably accessible" and "time-consuming and overly burdensome to retrieve and review." Thus, we continued to make inquiries, only to receive equally vague responses. <u>See</u> correspondence between counsel dated August 2, 2012, August 17, 2012, August 23, 2012, August 24, 2012, August 28, 2012, September 7, 2012 and September 19, 2012, annexed as Exhibit "I."

   In their responses, Defendants never explained why they could not retrieve any additional emails from Ms. O'Neill's hausofgaga.com email account. In fact, in his letter dated August 23, 2012, counsel explicitly stated: "Other than what Defendants have already produced in response to Document Request #20, Defendants do not possess any further responsive documents." Exhibit "I." After further inquiry, in his letter dated August 28, 2012, counsel

stated that the account was "destroyed" two days following Ms. O'Neill's termination. *Id*. Even with that, Defendants did not define in what manner the account was "destroyed" or indicate if any additional hausofgaga.com emails could be retrieved. In fact, to the contrary, counsel reiterated: "Furthermore, Defendants have already produced emails sent to Ms. O'Neill's hausofgaga.com email account from Ms. Germanotta's email account and emails received in Ms. Germanotta's email account from Ms. O'Neill's hausofgaga.com email account." Exhibit "I."

Ms. O'Neill was entitled to more than just Defendants' bald assertion that her account was destroyed. Even if in Defendants' opinion her hausofgaga.com emails were not readily accessible, the inquiry does not end there.

In a subsequent joint letter to this Court, Defendants elaborated somewhat by stating that the emails were not preserved in any form and that there are no backup tapes or other devices upon which Ms. O'Neill's emails were stored. *See* parties' Joint Letter dated October 12, 2012, annexed as Exhibit "J." At that point, Ms. O'Neill retained a computer consultant and explored various possibilities to verify Defendants' counsel's position. Ultimately, she decided not to pursue a motion to compel Defendants to conduct a further exploration of her hausofgaga.com emails.

## MS. O'NEILL'S FORENSIC ANALYSIS

A forensic analysis was undertaken on Ms. O'Neill's computer. That analysis confirmed that additional emails from Ms. O'Neill's hausofgaga.com account were available to Defendants, but Defendants intentionally, and unilaterally, opted not to produce them. The analysis also revealed that Defendants did not produce the entirety of documents they could have

produced.[3]

Specifically, the forensic analysis recovered numerous emails in which Ms. Germanotta was a recipient and Ms. O'Neill was also a recipient. *See* Exhibit "K." Those emails had not been produced by Defendants, yet they clearly had access to them because they were received by Ms. Germanotta..

Since Ms. O'Neill's hausofgaga.com account was indisputedly her "work" email account, the ready inference is that emails to which she was a recipient were work-related. More importantly, a review of these emails recovered reveal that they were work-related. That is no coincidence because Ms. O'Neill's position as Ms. Germanotta's assistant corresponded with a duty to be informed of important matters brought to Ms. Germanotta's attention, in the event Ms. Germanotta was not reading her emails, so that she could communicate these issues directly to Ms. Germanotta, and often back to the sender. These emails reflect that job duty.

In fact, since Ms. O'Neill served as an intermediary and was often in Ms. Germanotta's presence, it stands to reason that exponentially more emails were sent to Ms. O'Neill from third parties than from Ms. Germanotta. Those emails would be just as relevant as those between just Ms. O'Neill and Ms. Germanotta.

The category of emails in which Ms. Germanotta and Ms. O'Neill were both

---

[3]     The numerous non-produced emails which were recovered likely comprise only a small sample of what was not produced by Defendants – not only with respect to Ms. O'Neill's hausofgaga.com account but overall. During the forensic analysis, we were only able to recover emails from Ms. Germanotta to Ms. O'Neill's hausofgaga.com account for the periods December 10, 2010 through January 12, 2011 and February 15, 2011 through March 5, 2011. The only emails we were able to recover from Ms. Morris to Ms. O'Neill's hausofgaga.com account were for the periods December 7, 2010 through December 10, 2010, December 14, 2010 through January 12, 2011 and February 19, 2011 through March 8, 2011. Thus, there were still large gaps in time for which the forensic process could not retrieve emails.

recipients was responsive to Ms. O'Neill's request for both "[c]opies of any emails sent by Ms. O'Neill *and/or received by Ms. O'Neill* in the hausofgaga.com email account," and "[c]opies of documents not previously provided concerning Ms. O'Neill's job duties and/or performance of her job duties." (Italics added.)  Defendants had ready access to those emails, since they would be in Ms. Germanotta's email account, and production of those documents would not have been unduly burdensome.  Their unilateral decision not to produce more than those emails directly between Ms. O'Neill and Ms. Germanotta – and their careful construction of their written response to Ms. O'Neill's request about her hausofgaga.com emails – was in bad faith and is sanctionable.

Additionally, there were many emails which were represented to have been produced but which were not, i.e., between Ms. Germanotta and Ms. O'Neill (*see* Exhibit "L"), and between Ms. Germanotta and Ms. Morris relating to Ms. Germanotta's work schedule (*see* Exhibit "M").  The recovered, non-produced emails between Ms. Germanotta and Ms. O'Neill are relevant as they clearly relate to Ms. O'Neill's work duties, and those between Ms. Germanotta and Ms. Morris clearly pertain to Ms. Germanotta's work schedule.[4]

In any event, what is clear is that by deliberately declining to produce all emails found in Ms. Germanotta's account which included Ms. O'Neill's hausofgaga.com address as a recipient, Defendants purposely evaded their obligation to produce responsive, relevant electronically stored information during discovery.

---

[4]     Two of the recovered emails relating to Ms. O'Neill's work duties contained the beginning of a chain of emails, whereas Defendants produced only the end of the chain without including the earlier emails (Exhibit "N").  In fact, in many instances, Defendants produced only the end of email strings (Exhibit "O").  Defendants also produced the beginning or middle of emails, without producing the responding emails (Exhibit "P").

## ARGUMENT

## POINT I

### DEFENDANTS VIOLATED THEIR DISCOVERY OBLIGATIONS BY MISREPRESENTING THAT THEY DID NOT POSSESS ANY ADDITIONAL EMAILS RECEIVED BY MS. O'NEILL IN HER HAUSOFGAGA.COM ACCOUNT

Defendants' representations as to what emails they possessed and what they were producing were false and misleading and not in accordance with their obligations pursuant to the Federal Rules of Civil Procedure.

#### Rigorous Obligations Accompany Disclosure and Production of Electronically Stored Information

Fed.R.Civ.P. Rule 26(g) requires that initial disclosures, discovery responses, and objections be signed by an attorney of record. "By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," the response is consistent with the rules of discovery and is "not interposed for any improper purpose." Fed.R.Civ.P. 26(g)(1). Rule 26(g) charges all attorneys with a special, "affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes" of liberal discovery. *See* Advisory Committee Note, Fed.R.Civ.P. 26 (1983). As the comments to subsection(g)(1) make clear, this "affirmative duty" is satisfied when the attorney makes "a reasonably inquiry into the factual basis of his response, request, or objection." *Id.* The attorney's investigation and conclusions drawn therefrom must be reasonable under the circumstances. *Id.*

As officers of the court, all attorneys conducting discovery owe the court a heightened duty of candor. *See generally United States v. Gotti*, 322 F.Supp.2d 230, 236–38 (E.D.N.Y. 2004). Indeed, compliance with the rules regarding discovery is necessary to maintain

11

the integrity of the judicial process. *See Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73
(2d Cir. 1988).

It is settled that electronically stored information is discoverable under
Fed.R.Civ.P. 34(a). "During discovery, the producing party has an obligation to search available
systems for the information demanded." *McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001).
This is true even in the case of deleted computer files, including e-mails, notwithstanding that
they may initially appear inaccessible. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 311
(S.D.N.Y. 2003); *see also Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 3964742, **7-10
(S.D.N.Y. 2012); *Bank of Mongolia v. M & P Global Financial Services, Inc.*, 258 F.R.D. 514,
519 (S.D. Fla. 2009). Thus, a responding party has a rigorous obligation to ascertain the
accessibility of electronic records.

Of course a responding party "need not provide discovery of [ESI] from sources
that the party identifies as not reasonably accessible because of undue burden or cost."
Fed.R.Civ.P. 26(b)(2)(B). In such an instance, however, the responding party must identify the
sources containing the responsive information which it is not producing and for which it is not
searching, with sufficient detail to indicate the burdens and costs of providing the discovery. *Star
Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011);
*see also* Fed.R.Civ.P. 26, advisory committee's note (2006).

**Defendants' Document Responses**
**Were False, Misleading and Deficient**

Ms. O'Neill requested "[c]opies of any emails sent by Ms. O'Neill and/or *received*

*by Ms. O'Neill* in the hausofgaga.com email account." (Italics added.)[5] There was a source

containing responsive information which Defendants did not produce. The source was Ms.

Germanotta's email account and the responsive information comprised additional emails

received by Ms. O'Neill's hausofgaga.com account. Yet, Defendants did not produce these

additional emails, and in fact later reiterated that "[o]ther than what Defendants have already

produced in response to Document Request #20, Defendants do not possess any further

responsive documents."

      Defendants did not advise that they were withholding the additional emails

"received by Ms. O'Neill in the hausofgaga.com email account," or explain why producing them

would be burdensome. Instead, Defendants unilaterally limited the production of emails much

more narrowly than in the manner requested, and carefully constructed their document response

to protect themselves, leaving Ms. O'Neill with less discovery than that to which she was entitled

and which was readily available, but without knowing it.

      Pursuant to Rule 26(g), Defendants' counsel's signature on Defendants' discovery

responses "certifi[ed] that to the best of [their] knowledge, information, and belief formed after a

reasonable inquiry," the disclosure of the emails in the Second Response was "complete and

correct as of the time it was made." Fed.R.Civ.P. 26(g)(1)(A). The certification in this case was

improper and sanctionable. *See* Fed.R.Civ.P. 26(g)(3). Defendants' unilateral withholding of

certain emails, without court authorization or even notice to opposing counsel, was not warranted

---

[5]     The emails to which Ms. O'Neill's hausofgaga.com address was a recipient were likewise responsive to her 24th Request, "[c]opies of documents not previously provided concerning Ms. O'Neill's job duties and/or performance of her job duties." Since the hausofgaga.com address was Ms. O'Neill's "company" email account, emails sent to it were presumptively related to her job duties.

by existing law or by any non-frivolous argument for changing existing law. Fed.R.Civ.P.

26(g)(1)(B)(i).  "[N]o reasonable person, especially an attorney, could dispute that the initial step

in resolving any such conflict would be to seek the guidance of the Court rather than pick a route

of its own unilaterally" and without notice to opposing counsel. *Travel Sentry, Inc. v. Tropp,* 669

F.Supp.2d 279, 286 (E.D.N.Y. 2009).  Defendants' initial misleading responses to Ms. O'Neill's

discovery demands contravened the bedrock principle underlying the discovery rules: "that

parties be forthcoming with relevant information in their possession." *Rofail v. U.S.*,

227 F.R.D. 53, 58 (E.D.N.Y. 2005).  Defendants' later false and unequivocal representation that

"Defendants do not possess any further responsive documents" only reinforced their deliberate

strategy to deny Ms. O'Neill relevant discovery. *See In re Delta/AirTran Baggage Fee Antitrust*

*Litigation*, 846 F.Supp.2d 1335, 1351 (N.D. Ga. 2012) ("Compounding the problem are Delta's

repeated representations that it had produced everything").

       To the extent that counsel contend that they were unaware of these additional

emails, then counsel did not conduct a reasonable inquiry into the factual basis for their explicit

representation that "Defendants do not possess any further responsive documents."  Counsel

should have ensured that all sources of discoverable information were identified and searched for

"any emails sent by Ms. O'Neill and/or received by Ms. O'Neill in the hausofgaga.com email

account."  Their failure to do so would likewise violate the strict mandates of Rule 26(g).  Any

uninformed conclusion that both Ms. O'Neill and Ms. Germanotta would not be recipients to

emails sent from third parties would not be reasonable in view of Ms. O'Neill's role in Ms.

Germanotta's life and the abundant emails demonstrating that to be just the case.

       Thus, Defendants violated Rule 26(g) by certifying statements that were obviously

false.

## POINT II

### SANCTIONS IN THE FORM OF PROHIBITING DEFENDANTS FROM OPPOSING MS. O'NEILL'S CLAIMS AND REQUIRING PAYMENT FOR HER REASONABLE EXPENSES ARE APPROPRIATE

Ms. O'Neill and her counsel have expended significant time and money inquiring about the additional hausofgaga.com emails, researching her entitlement to information about Defendants' purported inability to provide the additional emails and performing a forensic analysis to recover as many hausofgaga.com emails as she could.  Consequently, Defendants should be prohibited not only from using the emails they did produce to support their defenses, but also prohibited from opposing Ms. O'Neill's claims.  They likewise should be compelled to pay for Ms. O'Neill's reasonable expenses, including attorney's fees, incurred as a result of their misconduct.

Under Rule 26(g), the Court may impose attorney's fees and/or other sanctions for an improper certification unless the violation was "substantially justified." Fed.R.Civ.P. 26(g)(3). The substantial justification necessary to avoid the imposition of sanctions "has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute' ... or 'if reasonable people could differ' " regarding the appropriateness of the conduct at issue. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted).  Where a certification is made "without substantial justification" in violation of this rule, "the court, on motion or on its own, <u>must</u> impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed.R.Civ.P. 26(g)(3) (emphasis added); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 51, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (imposition of sanctions is mandatory for a violation of Rule 26(g)).  Through

15

use of this compulsory language, Rule 26(g) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." Fed.R.Civ.P. 26(g) Advisory Committee's Note (1983 Amendment).

      Additionally, under Rule 37(c), "sanctions are not limited to initial disclosure violations but may be predicated on a party's failure to amend its prior discovery responses." *Lujan v. Cabana Management, Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012), *citing Haas v. Del. & Hudson Ry. Co.*, 282 F.App'x 84, 85–86 (2d Cir. 2008); *Kosher Sports, Inc. v. Queens Ballpark Co.*, No. 10–CV–2618, 2011 WL 3471508, at *12 (E.D.N.Y. 2011); *Robbins & Meyers*, 274 F.R.D. at 74; *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). A party that fails to supplement its discovery responses as required under Rule 26(e) "is not allowed to use that information ... to supply evidence ... at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard[,] ... may order payment of the reasonable expenses, including attorney's fees, caused by the failure," "may inform the jury of the party's failure" or may impose "other appropriate sanctions," up to and including "prohibiting the disobedient party from ... opposing designated claims ..., or from introducing designated matters into evidence," "striking pleadings in whole or part" or "rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(c)(1), 37(b)(2)(A) (emphasis added). These types of sanctions are designed to fulfill the three underlying purposes of Rule 37: (1) to ensure that a party will not be able to profit from its failure to comply with discovery requirements; (2) to act as a specific deterrent in securing compliance with a particular order; and (3) to act as a general deterrent in enforcing adherence to the courts overseeing parties to litigation. *Monaghan v. SZS 33 Associates, L.P.*,

16

154 F.R.D. 87, 90 (S.D.N.Y. 1994).

Courts enjoy broad discretion in deciding whether to sanction a party for a discovery violation pursuant to Rule 37(c). *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).  In determining whether to exercise the discretion to preclude evidence under Rule 37, the courts "consider a number of factors, including: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance.' " *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012), *quoting Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir.2009).  The Second Circuit Court of Appeals has noted, however: "[b]ecause the text of the rule requires only that the district court's orders be 'just,'... and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir.2010) (citation omitted).[6]

---

[6]     Notably, the Court's inherent power is another source of authority for sanctions. "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" to assess fees as a sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (affirming award of attorneys' fees in the amount of $39,905 under the district court's inherent powers as a sanction for the late production of documents).

**Defendants' Failure to Comply with the Discovery Rules**
**was Willful, Continued for the Duration of Discovery and**
**There Was No Adequate Explanation for Noncompliance**

A court's finding that a party has "acted in conscious disregard of [its] discovery obligations" may fulfill the bad faith requirement when based on clear evidence. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("Indeed, the record reflects a pattern of behavior which could reasonably be construed as a bad faith effort to thwart [the opponent's] discovery efforts."); *see also Blauinsel Stiftung v. Sumitomo Corp.*, 2004 WL 287179, at *1-2 (2d Cir. 2004) (affirming sanction against party and its attorney for misrepresentations and bad faith evasion of discovery obligations and awarding aggrieved party its reasonable legal fees and additional $10,000 from offending attorney); *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, *11 (E.D.N.Y. 2011) (sanctions appropriate where plaintiff's president and attorney both sought to conceal audio recordings of relevant meetings); *Metro. Opera Ass'n v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 220-221, 231 (S.D.N.Y. 2003) (sanctioning party and its counsel pursuant to, *inter alia*, the court's inherent power based on discovery abuses including counsel's false representations concerning the completeness of document production, and awarding aggrieved party its attorneys' fees).

A review of the choice of wording used in Defendants' response to Ms. O'Neill's request for her hausofgaga.com emails alone provides the clear evidence of their conscious disregard of their obligations. *See e.g. In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114 (S.D. N.Y. 2007) (an insurer and its attorneys were subject to sanctions for failure to produce a paper copy of an electronic form as it existed on the day of the Sept. 11 attack where

the insurer had deleted an electronic copy of the policy as it appeared in its computer records, and its attorneys did not act inadvertently in allowing a printed copy of the policy to languish in their files, thereby warranting sanctions of $500,000 on the insurer and its attorneys jointly and severally).

In that regard, Defendants have never explained why they limited their production to emails "sent to" and "received from" Ms. Germanotta and Ms. O'Neill, rather than all emails which Ms. Germanotta possessed which included Ms. O'Neill's hausofgaga.com email address as a recipient.  They unilaterally chose to provide only those emails sent directly between Ms. O'Neill and Ms. Germanotta when other emails sent to Ms. O'Neill were just as accessible. Those additional emails responsive to Ms. O'Neill's request clearly exist as demonstrated by Ms. O'Neill's forensic analysis, since they were sent to Ms. Germanotta as well.  Defendants never supplemented their discovery responses as required under Rule 26(e), despite Ms. O'Neill's continuing inquiries about additional emails she sent from and received in her hausofgaga.com account, and there is no adequate explanation for Defendants' failure to comply with the discovery rules by responding to a discovery request in their preferred manner versus what was requested.

Defendants' repeated evasiveness in response to Ms. O'Neill's explicit and direct inquiries further betrays the consciousness of their actions in a bad faith effort to hinder Ms. O'Neill's ability to fully obtain the evidence supporting her claims.  They were afforded several opportunities to supply the additional emails received by Ms. O'Neill which they had available but opted not to so do.  Thus, they lacked substantial justification for their failure to comply with their discovery obligations, warranting the mandatory imposition of sanctions under Fed.R.Civ.P.

26(g)(3). *See e.g. Gucci Am., Inc., v. Gucci*, 2009 WL 440463, *5 (S.D.N.Y 2009) (clearly relevant emails not produced by defendant and later found during a forensic analysis of defendant's computer; "[b]ecause [plaintiff] persistently sought additional documentation from [defendant], he could not have failed to understand the continuing nature of his discovery obligations.")

### Lesser Sanctions Would Not Be Effective

The sanctions listed in Rule 37(c)(1) are appropriate, i.e., precluding the Defendants from using the limited emails which they did produce to support their defenses at the trial in this matter, and ordering payment of Ms. O'Neill's expenses, including attorneys' fees, caused by the failure. *See e.g. Lodge v. United Homes, LLC*, 787 F.Supp.2d 247, 248, 263 (E.D.N.Y. 2011) (ordering defendants to compensate plaintiff for costs and fees in pursuing discovery and making the sanctions motion, and precluding defendants from introducing evidence produced after a date certain and any testimony relating to the documents which it failed to produce); *see also Richmond v. General Nutrition Centers Inc.*, 2012 WL 1658299, *3 (S.D.N.Y. 2012) (plaintiffs precluded from pursuing backpay claims for failing to produce certain tax returns and relevant schedules within the discovery period).

To be sure, the more severe sanctions are reserved for cases in which the obstructionist conduct was undertaken in bad faith or intentionally. *See e.g. Metro. Opera*, 212 F.R.D. at 231 (ordering judgment for plaintiff on the issue of liability as sanction for union's discovery abuses); *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir.1999) (entering an adverse inference against the offending party with respect to the improperly withheld evidence).  However, Defendants' obstructionist conduct was clearly undertaken in bad faith or

intentionally, and thus warrants such sanctions.

The additional emails sent to Ms. O'Neill's hausofgaga.com account were important because they likely reflected her performing work, or at least created the inference that she was working during those moments. From Defendants' decision to withhold these additional emails to which she is entitled, Ms. O'Neill has been prejudiced in her ability to corroborate her claim involving how many hours per day she worked for Defendants through circumstantial evidence. That is the core issue in this action. She has further lost time and spent unnecessary resources to pursue the discovery, ultimately by alternate means. Such prejudicial effects routinely warrant sanctions. *See Gucci Am., Inc., v. Gucci*, 2009 WL 440463, *6 (S.D.N.Y 2009) ("The injury created by Mr. Litwak's failure to meet his discovery obligations under the TRO is the expense incurred by Gucci in pursuing that discovery by alternate means. Gucci is therefore entitled to an award of the attorneys' fees and costs attributable to the additional discovery it has undertaken and the motion practice in which it has been forced to engage."); *Invision Media Commc'ns, Inc. v. Fed. Ins. Co.*, 2004 WL 396037, *9 (S.D.N.Y. 2004) ("the plaintiff has disregarded its discovery obligations, made misleading statements regarding the existence and location of relevant evidence, and/or failed to make reasonable inquiries into matters pertinent to the pretrial discovery phase of this litigation. The plaintiff's conduct has resulted in several months of unnecessary delay, and numerous hours of unnecessary work on the part of the parties and the Court.").

In any event, prejudice is only one factor to be considered in considering the imposition of sanctions. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998). Condoning Defendants' attempt to hinder Ms. O'Neill's ability to prove her claims would

be ineffective in controlling discovery and deterring future similar conduct. *See Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 325 (S.D.N.Y. 2008) ("even if the recovery of computer data did not produce documents relevant to the litigation, accepting plaintiff's argument that she should not be held accountable for her grossly negligent conduct would be tantamount to permitting parties to engage in vexatious and wanton conduct during discovery, as long as the withheld evidence did not turn out to be the "smoking gun" in the case. ... Such a permissive policy would undermine the discovery process and give parties an incentive to roll the proverbial dice by withholding potentially relevant information and hoping that it does not turn out to be relevant at trial.").

Accordingly, granting the requested sanctions would be fully appropriate and justified in light of Defendants' misconduct.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court grant Plaintiff's motion in its entirety, and grant such other and further relief as it deems proper.

Dated: December 14, 2012
      New York, New York

                              Respectfully submitted,

                              SNITOW KANFER & HOLTZER, LLP

                By: _____
                              Virginia K. Trunkes (VT 8642)
                              575 Lexington Avenue
                              New York, New York 10022
                              (212) 317-8500
                              *Counsel for Plaintiff Jennifer O'Neill*

M:\CLIENT\436\Discovery Dispute\MOLrevised.wpd

<u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK   )

       RACHEL ALICEA, being duly sworn, deposes and says that deponent is not a

party to this action, is over 18 years of age and resides in New York, County of New York; that,

following attempted service on December 14, 2012, on December 17, 2012, deponent served by

hand a true copy of the within Memorandum of Law in Support of Motion for Sanctions to the

following counsel of record:

> PROSKAUER ROSE, LLP
> Steven Hurd, Esq.
> Brian Gershengorn, Esq.
> Eleven Times Square
> New York, New York 10036
> *Attorneys for Defendant Mermaid Touring, Inc.*
> *and Stefani Germanotta, a/k/a "Lady Gaga"*

                                         RACHEL ALICEA

Sworn to before me this
17th day of December, 2012

NOTARY PUBLIC

VIRGINIA K TRUNKES
Notary Public, State of New York
No. 02TR6177577
Qualified in New York County
Commission Expires December 20, 2015