Steven D. Hurd
Brian J. Gershengorn
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JENNIFER L. O'NEILL,                                            :
                                                               :
                                       Plaintiff,              :     Civ. No.:  11 CIV 9128 (PGG)
                                                               :
                    -- against --                              :     ECF
                                                               :
MERMAID TOURING INC. AND                                       :
STEFANI GERMANOTTA, a/k/a                                      :
"LADY GAGA,"                                                    :
                                       Defendants.             :

-------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS .........................................................................................1

I.    AGRUMENT ...........................................................................................5

    A.    Legal Standard ....................................................................................5

    B.    Any Unpaid Overtime to Which Plaintiff May Be Entitled Should Be Calculated Using the Half-Time Method of Calculating Overtime Compensation ....................................................................................6

    C.    O'Neill Is Not Entitled To Overtime Pay Pursuant To The New York State Labor Law For Hours Worked Outside of New York ..........................19

    D.    Plaintiff's Alleged "On Call" Time Is Not Compensable As A Matter of Law ..................................................................................20

    E.    O'Neill's Spread of Hours Claim Must Fail Because She Has Already Been Compensated At An Amount Greater Than The Minimum Wage Due Plus An Additional Hour For Each Day Of Her Employment ..............................23

II.    CONCLUSION...........................................................................................25

**Table of Authorities**

Page(s)

**CASES**

*149 Madison Ave. Corp. v. Asselta,*
331 U.S. 199 (1947) ...................................................................................................6

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................................6

*Blackmon v. Brookshire Grocery Co.,*
835 F.2d 1135 (5th Cir. 1988) ...............................................................................9, 14

*Brennan v. Valley Towing Co., Inc.,*
515 F.2d 100 (9th Cir. 1975) .................................................................................17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................................................6

*Chan v. Triple 8 Palace,*
No. 03-cv-6048, 2006 U.S. Dist. LEXIS 15780 (S.D.N.Y. Mar. 30, 2006) ...........24

*Clements v. Serco, Inc.,*
530 F.3d 1224 (10th Cir. 2008) .............................................................................9, 14

*D'Camera v. District of Columbia,*
722 F. Supp. 799 (D.D.C. 1989) .............................................................................18

*Daniels v. 1710 Realty, LLC,*
No. 10-cv-0022, 2011 WL 3648245 (E.D.N.Y. Aug. 17, 2011) ...........................22

*Desmond v. PNGI Charles Town Gaming, LLC,*
630 F.3d 351 (4th Cir. W. Va. 2011) .....................................................................9, 10

*Donihoo v. Dallas Airmotive, Inc.,*
No. 97-CV-0109, 1998 WL 47632 (N.D. Tex. Feb. 2, 1998) ...............................18

*Doo Nam Yang v. ACBL Corp.,*
427 F. Supp. 2d 327 (S.D.N.Y. 2005) .....................................................................24

*FDIC v. Great Am. Ins. Co.,*
607 F.3d 288 (2d Cir. 2010) .....................................................................................6

*Gorzynski v. JetBlue Airways Corp.,*
596 F.3d 93 (2d Cir. 2010) .......................................................................................6

*Hammell v. Banque Paribas*,
   No. 90-cv-4799, 1993 U.S. Dist. LEXIS 14755 (S.D.N.Y. Oct 19, 1993) ............................ 19

*Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*,
   No. 06-cv-0134, 2006 U.S. Dist. LEXIS 56710 (S.D.N.Y. Aug. 9, 2006) ............................ 19

*Hasan v. GPM Investments, LLC*,
   No. 7-cv-1779, 2012 U.S. Dist. LEXIS 121048 (D.Conn. Aug. 27, 2012) ............................ 18

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   261 F. Supp. 2d 188 (E.D.N.Y. 2003) .............................................................................. 5

*Kadden v. VisuaLex, LLC*,
   No. 11-cv-4892, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012) ...................................... 13

*Li Ping Fu v. Pop Art Int'l Inc.*,
   No. 10-cv-8562, 2011 U.S. Dist. LEXIS 113614 (S.D.N.Y. Sept. 19, 2011) ..................... 24

*Malena v. Victoria's Secret Direct, LLC*,
   No. 09-cv-5849, 2012 U.S. Dist. LEXIS 115900 (S.D.N.Y. Aug. 16, 2012) ..................... 24

*Marcella v. Capital Dist. Physicians' Health Plan, Inc.*,
   293 F.3d 42 (2d Cir. 2002) ............................................................................................ 15

*Martin v. PepsiAmericas, Inc.*,
   No. 07-cv-2009 U.S. Dist. LEXIS 112917 (N.D.Miss. Dec. 3, 2009) .............................. 18

*Martin v. Tango's Rest.*,
   969 F.2d 1319 (1st Cir. 1992) ....................................................................................... 11

*Mayhew v. Wells*,
   125 F.3d 216 (4th Cir. 1997) ........................................................................................ 17

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ........................................................................................... 6

*Monahan v. Cnty. Of Chesterfield*,
   95 F.3d 1263 (4th Cir. 1996) ........................................................................................ 17

*Moon v. Kwon*,
   248 F. Supp. 2d 201 (S.D.N.Y. 2002) ............................................................................ 21

*Nonnenmann v. City of New York*,
   No. 02-cv-10131, 2004 WL 1119648 (S.D.N.Y. May 20, 2004) ..................................... 22

*Overnight Motor Transp. Co. v. Missel*,
   316 U.S. 572 (1942) ........................................................................................... passim

*Perkins v. Southern New England Tel. Co.*,
  No. 7-cv-967, 2011 U.S. Dist. LEXIS 109882 (D.Conn. Sept. 27, 2011)...............................18

*Roach v. T.L. Cannon Corp.*,
  No. 10-cv-0591, 2012 U.S. Dist. LEXIS 120507 (N.D.N.Y. Aug. 24, 2012).........................24

*Roberts v. Ground Handling Inc.*,
  499 F. Supp. 2d 340 (S.D.N.Y. 2007)....................................................................................15

*Rushing v. Shelby Cty. Government*, 8 F. Supp. 2d 737 (W.D.Tenn. 1997)................................18

*Santillan v. Henao*,
  822 F.Supp.2d 284 (E.D.N.Y. 2011) .....................................................................................20

*Severin v. Project Ohr, Inc.*,
  No. 10-cv-9696, 2012 WL 2357410 (S.D.N.Y. June 20, 2012) .............................................15

*Seymour v. PPG Indus.*,
  No. 09-cv-1707, 2012 U.S. Dist. LEXIS 122880 (W.D.Pa. Aug. 29, 2012) ..........................17

*Shaw v. Bank of Am., N.A.*,
  2010 U.S. Dist. LEXIS 117582 (N.D. Ga. July 29, 2010)......................................................18

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)...............................................................................................................21

*Torres v. Bacardi Global Brands Promotions, Inc.*,
  482 F.Supp. 2d 1379 (S.D.Fla. 2007) ....................................................................................18

*Tumulty v. FedEx Ground Package Sys., Inc.*,
  No. 04-1425P, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005).........................18

*Urnikis-Negro v. Am. Family Prop. Servs.*,
  616 F.3d 665 (7th Cir. 2010) ......................................................................................... passim

*Valerio v. Putnam Assocs., Inc.*,
  173 F.3d 35 (1st Cir. 1999)..........................................................................................9, 14, 17

*Yellow Transit Freight Lines, Inc. v. Balven*,
  320 F.2d 495 (8th Cir. 1963) .................................................................................................17

*Zhong v. Zijun Mo.*,
  No. 10-cv-0806, 2012 U.S. Dist. LEXIS 99966 (E.D.N.Y. July 17, 2012)............................22

*Zlotek v. Safelite Glass Corp.*,
  884 F. Supp. 283 (N.D. Ill. 1995) ..........................................................................................18

## STATUTES

29 U.S.C. § 207(a)(1) ................................................................................................ 6, 12

213 U.S.C.§ 213(f) ........................................................................................................ 11

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ....................................................... 1

N.Y. Prac. § 7:40 ............................................................................................................ 19

New York Labor Law ........................................................................................... 1, 19, 20

New York State Labor Law, §§ 190 *et seq.* ...................................................................... 1

NYLL § 650(2) ............................................................................................................... 20

## OTHER AUTHORITIES

29 C.F.R. § 553.221(c) ................................................................................................... 21

29 C.F.R. § 553.221(d) .................................................................................................. 22

29 C.F.R. § 778.107 ......................................................................................................... 6

29 C.F.R. § 778.109 ......................................................................................................... 6

29 C.F.R. § 778.114(a) .............................................................................................. 12, 13

29 C.F.R. § 785.14 ......................................................................................................... 21

29 C.F.R. § 785.15 ......................................................................................................... 21

29 C.F.R. § 785.17 ................................................................................................... 21, 22

29 C.F.R. § 785.223 ....................................................................................................... 22

29 CFR § 778.114 .................................................................................................. passim

76 Fed. Reg. 18,832, 18,850 (April 5, 2011) ................................................................ 13

12 NYCRR § 142-2.4 ................................................................................................ 2, 24

Fed.R.Civ.P. 56(a) ........................................................................................................... 5

## PRELIMINARY STATEMENT

Defendants move for partial summary judgment on four (4) separate issues.[1]  First, any overtime compensation due to Plaintiff should be calculated at half-time, rather than at time-and-a-half, since Plaintiff has already received straight-time pay for all hours she worked in a week, not just the first 40 hours she worked each week.  Second, Plaintiff is not entitled to overtime compensation pursuant to the New York State Labor Law for the hours she worked outside of New York State.  Third, Plaintiff's alleged "on call" time is not compensable since she was able to use such time for her own personal use rather than for her employer's benefit.  Fourth, Plaintiff is not entitled to any additional compensation under the New York Spread of Hours Law because the New York Labor Law does not apply to her and also because she has already been paid an amount greater than the minimum wage plus an additional hour's pay per day at the minimum wage.

## STATEMENT OF FACTS

Plaintiff Jennifer O'Neill ("Plaintiff" or "O'Neill") filed her Amended Complaint ("Compl. ¶ ___")[2] against Defendants Mermaid Touring, Inc. ("Mermaid") and Stefani Germanotta, a/k/a/ "Lady Gaga" ("Germanotta")(collectively, "Defendants") on June 7, 2012. Plaintiff worked as a personal assistant to Ms. Germanotta for approximately four weeks in early 2009 and also from about February 5, 2010 through the termination of her employment with Defendants on March 5, 2011.  (Compl. ¶ 20.)  Plaintiff asserts three (3) causes of action against Defendants: (1) violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") for Defendants' alleged failure to pay overtime wages; (2) violation of the New York

---

[1] For the purposes of this motion only, Defendants will assume that Plaintiff does not meet the Administrative Exemption.
[2] Plaintiff's Amended Complaint is Docket entry 13 and is hereafter referred to as ("Compl.").

State Labor Law, §§ 190 *et seq.* ("NYSLL") for Defendants' alleged failure to pay overtime

wages; and (3) violation of the NYSLL, 12 NYCRR § 142-2.4, for Defendants' alleged failure to

pay an additional hour's pay at the minimum hourly wage rate for each day which she worked

ten (10) or more hours.  (Compl. ¶ 34-49).  Plaintiff alleges that she was "expected to be working

and/or on call every hour of every day" during the course of her employment at Mermaid

(Compl. ¶ 19) and as a result, she alleges she is owed unpaid overtime pay for every hour of

every day beyond forty hours per week for every week of her employment.  (Compl. ¶ 22).

### 1.  Personal Assistant in 2009

O'Neill moved from New York City to Los Angeles in 2008.  Deposition of Jennifer

O'Neill ("O'Neill Dep.") at 7:12-20.[3]  While O'Neill's parents currently live on Long Island, she

does not live with her parents and has not lived in the state of New York since 2008.  (O'Neill

Dep. 7:21-8:21.)  O'Neill has an apartment in New York City; however, she has been subletting

the apartment since she moved to Los Angeles in 2008.  (O'Neill Dep. 8:22-9:21.)

O'Neill became a personal assistant to Germanotta in early 2009 when Germanotta

offered her a job. (O'Neill Dep. 23:24-24:6.)  Though Germanotta thought to hire O'Neill

because the two were friends (Deposition of Stefani Germanotta ("Germanotta Dep."), at 101:7-

12)[4], O'Neill had previously worked in the music industry.  (Germanotta Dep. 25:9-15, 303:10-

15; O'Neill Dep. 28:7-20, 166:15-20.)  *See also* Appendix 3 (Plaintiff's resume).  Germanotta

did not specifically explain what O'Neill's duties would be, however O'Neill knew "what a

personal assistant is."  (O'Neill Dep. 26:23-27:5.)  O'Neill believed that, as a personal assistant

to Germanotta, she would be working "24/7."  (O'Neill Dep. 27:11-16.)  O'Neill accepted the

---

[3] Deposition excerpts for Jennifer O'Neill are attached to Appendix 1 of the 56.1 statement and is
hereafter referred to as ("O'Neill Dep.").
[4] Deposition excerpts for Stefani Germanotta are attached to Appendix 2 of the 56.1 statement
and is hereafter referred to as ("Germanotta Dep.").

job offer in Los Angeles, and flew to London the next day to meet Germanotta. (O'Neill Dep. 24:3-11.) In 2009, O'Neill was paid $1,000 per week for each week of her employment. (O'Neill Dep. 25:20-23.) There was no discussion of any additional payments for overtime compensation. (O'Neill Dep. 27:21-23.) O'Neill believed that she would be paid $1,000 a week to work "24/7." (O'Neill Dep. 28:3-6.) After approximately four to eight weeks, O'Neill resigned and returned to the United States. (O'Neill Dep. 24:18-24; 25:6-11.) O'Neill's entire 2009 employment was spent outside of the United States. (O'Neill Dep. 23:5-23.)

### 2.  Personal Assistant in 2010 and 2011

Germanotta rehired O'Neill as her personal assistant on or around February 5, 2010. (O'Neill Dep. 30:12-13; 31:8-11.) When O'Neill spoke with Germanotta about working again as her personal assistant, O'Neill believed that she was again hired to work "24/7." (O'Neill Dep. 34:21-25.) O'Neill did not discuss her salary with Germanotta at this time. (O'Neill Dep. 35:2-11.) However, O'Neill spoke with Troy Carter, Germanotta's manager, who told her that she would receive an annual salary of $75,000. (O'Neill Dep. 35:19-25.) O'Neill was paid an annual salary of $75,000 when she worked for Germanotta in 2010 and 2011. (O'Neill Dep. 31:22-24.) O'Neill understood that the $75,000 would be her total compensation for all of the work that she did for Germanotta. (O'Neill Dep. 36:8-16.) O'Neill never discussed overtime compensation with anyone in 2010, except she asked Germanotta for additional compensation when Germanotta's tour was extended by a few days in Paris due to a snowstorm in December 2010. (O'Neill Dep. 32:8-33:4.) O'Neill asked Germanotta for additional compensation for the days that the tour was delayed, though she continued to make her $75,000 annual salary over the course of those few days. (O'Neill Dep. 32:22-33:12; Germanotta Dep. 20:17-21:21.) Other than this one discussion about extra compensation relating to a delay in the tour, O'Neill never

3

had any discussions with Germanotta or anyone else about being paid overtime.  (O'Neill Dep.

33:17-25.)  O'Neill's employment with Germanotta was terminated on or around March 5, 2011.

(O'Neill Dep. 39:9-14.)

### 3.  O'Neill's Hours

O'Neill testified that, during the course of her employment, she believed that she was

"always working 24/7" because she was "on call."  (O'Neill Dep. 56:24-57:7; 128:7-13.)

However, O'Neill testified, for example, that she was able to go out to dinner and visit with

friends (69:18-70:14), go out to a club (137:8-21), attend a carnival (138:3-139:7), "chill" in a

hotel room (143:7-144:25), work on her tan by the pool at a hotel (152:6-21), go out to a

restaurant for dessert (156: 6-20), go to a doctor's appointment (133:19-134:17), spend time with

her parents (133:23-134:9), visit with her sister in Caldwell, New Jersey (157:2-158:19), go on a

date (60:6-16), get a manicure and pedicure (161:3-10), and get her hair cut (160:2-161:10), all

while she was "on call."  During the times she was "on call," no restrictions were placed on

O'Neill, except she was required to have her BlackBerry and/or cell phone with her.  (O'Neill

Dep. 98:7-14; 152:14-21.)  O'Neill further testified that she was "on call 24/7" even when

Germanotta was on vacation in another state, and the same rule applied, i.e. she was given no

restrictions except she was required to carry her BlackBerry and/or cell phone.  (O'Neill Dep.

97:13-16.)  During breaks from the tour when O'Neill was in New York, O'Neill felt that, as

long as she stayed in New York City she was free to do what she wanted so long as

Germanotta's needs were met.  (O'Neill Dep. 58:20-59:13.)

O'Neill also testified that she continued to make her regular salary despite fluctuations in

her work schedule: O'Neill attended her own six-hour birthday party at a restaurant (O'Neill

Dep. 54:12-55:3), took time off in June 2010 (O'Neill Dep. 55:22-56:20), took off the month of

January 2011, during which she worked "[a] couple hours a day, and maybe not every day" (O'Neill Dep. 101:5-16), and was unable to work because of illness on at least two occasions (O'Neill Dep. 164:2-10), all while making her normal salary.

In addition, the tour schedule varied from day to day and week to week.  According to O'Neill, "[t]here's no typical day of being on tour." (O'Neill Dep. 71:15-16.)  While tour itineraries, showing the dates on which the tour would travel though particular cities, were provided to the parties in advance of the tour, daily schedules were often created at the last moment.  No one saw daily schedules more than a day or two in advance "because the schedule is made Sunday before Monday and Monday before Tuesday."  (Germanotta Dep. 181:6-11; Deposition of Wendi Morris ("Morris Dep.") at 98:16-23; 100: 20-25. [5]

During the course of her employment, O'Neill always travelled with Germanotta's tour. Therefore, on any given day she was located in the city indicated on the tour itineraries.  (O'Neill Dep. 65:24-66:11.)

## I.   ARGUMENT

### A. Legal Standard

A motion for summary judgment is appropriately granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a mater of law. Fed.R.Civ.P. 56(a).  In addition, Rule 56 "authorizes partial summary judgment that falls short of a final determination to limit the issues to be determined at trial."  *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 231 (E.D.N.Y. 2003).  When considered for the purposes of summary judgment, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a

---

[5] Deposition excerpts for Wendi Morris are attached to Appendix 4 of the 56.1 statement and is hereafter referred to as ("Morris Dep.").

reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)(internal quotation marks and citations omitted).

On a motion for summary judgment, "[t]he moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When that burden has been met, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In assessing the record to determine whether there is a genuine issue [of material fact] to be tried, we are required to resolve all ambiguities and draw all possible factual inferences in favor of the party against whom summary judgment is sought." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)(citing *Anderson*, 477 U.S. at 242).

### B. Any Unpaid Overtime to Which Plaintiff May Be Entitled Should Be Calculated Using the Half-Time Method of Calculating Overtime Compensation.

The FLSA entitles covered employees to overtime compensation at one and one-half times their regular hourly rate for any hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107. For purposes of the overtime calculation, an employee's regular rate of pay is the amount of compensation he or she receives per hour. 29 C.F.R. § 778.109. While this is most easily understood in the context of employees paid hourly, the FLSA does not require employers to pay their employees by the hour. *See 149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199 (1947). When an employee is paid a salary, "[t]he regular hourly rate of an employee is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. As discussed in greater detail below, under the

6

"half-time" or "fluctuating workweek" methods of compensation, an employee is paid a fixed

weekly salary to cover <u>all</u> hours worked each week, regardless of their number.  *See Overnight*

*Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942); 29 CFR § 778.114.  This calculation can

produce varying hourly rates depending on the number of hours actually worked.  *See Missel*,

316 U.S. at 580.

There is a significant distinction in how overtime compensation is calculated for

employees who are paid a fixed salary to cover a set number of hours per week rather than all of

the hours that they work.  The following examples are illustrative.  Had O'Neill been hired to

work 40 hours a week at an annual salary of $75,000, her regular hourly rate would have been

$36.06 per hour.[6]  Thus, if O'Neill worked 70 hours in a particular week, she would have been

paid an additional $54.09 ($36.06 x 1.5) for each hour over 40 on top of her annual salary of

$75,000 under the time-and-a-half approach, which assumes that her $75,000 salary was only

intended to cover the first 40 hours that she worked each week.  O'Neill would be due $1,622.70

in overtime compensation for her 30 overtime hours and her total compensation for that week

would be $3,065.01 ($1,442.31 regular rate + $1,622.70 in overtime).

In contrast, under the half-time or fluctuating workweek approach, O'Neill's weekly

salary if she worked 70 hours in a particular week would have covered her straight-time pay for

all hours worked at a rate of $20.60 per hour.[7]  Moreover, for the 30 overtime hours worked

O'Neill would be due $10.30 an hour ($20.60 x .5), or an additional $309 for the week, for a

---

[6] $75,000 divided by 52 equals a fixed weekly salary of $1,442.31.  When divided by 40, this calculation yields an hourly rate of $36.06.
[7] Under the half-time or fluctuating workweek approach, O'Neill's weekly salary is divided by the number of hours worked that week.  $1,442.31 divided by 70 equals $20.60 per hour.

total compensation that week of $1,751.31 ($1,442.31 regular rate + $309 in overtime).[8]  Using

these same calculations, had O'Neill worked 100 hours a particular week she would be due

$3,245.40 in unpaid overtime for the week under the time-and-a half approach for a total

compensation of $4,687.71, whereas under the half-time or fluctuating workweek approach she

would be due $432.60 in unpaid overtime for a total of $1,874.91 for the week.[9]

Assuming O'Neill worked 161 hours in a particular week (23 hours a day, allowing only

one hour of sleep a day—an absurd assumption), she would be due an additional $6,544.89 in

unpaid overtime under the time-and-a-half approach for a weekly total of $7,987.20.  Under the

half-time or fluctuating workweek approach she would be due an additional $544.50 in unpaid

overtime compensation for the week, for a total weekly salary of $1,986.81.[10]  Thus, ignoring

*Overnight Motor* and Section 778.114 in the calculation of overtime damages in an overtime

classification case would result in Plaintiff receiving hundreds of thousands of dollars for work

that she was already compensated for.

Given this large disparity in potential damages, Defendants seek an order from the Court

as to which method of calculating potential damages is appropriate.  Defendants submit that to

the extent O'Neill is entitled to any damages, she is only entitled to a half-time overtime

---

[8] Since O'Neill has already been compensated "straight time" for all hours worked, she would be
due an additional half of her hourly wage, calculated at $10.30, for each overtime hour worked.
[9] Under the time-and-a-half approach, O'Neill would be due $54.09 for each of the 60 overtime
hours for a total overtime compensation of $3,245.40.  When the half-time or fluctuating
workweek method is used, O'Neill's hourly wage of $14.42 is calculated by dividing her weekly
salary of $1442.31 by 100.  O'Neill would be due an additional 50% of her hourly rate for each
of the 60 overtime hours worked.  She would thus be due $7.21 for each of the 60 overtime hours
for a total overtime compensation of $432.60 for the week.
[10] Under the time-and-a-half approach, O'Neill would be due $54.09 per hour for all 121
overtime hours for a total overtime compensation of $6,544.89.  Under the half-time approach,
O'Neill's hourly rate for the week would be $1,442.31 divided by 161, which is equal to an
hourly rate of $8.99 for the week.  O'Neill would be owed half of her hourly rate for each of the
121 overtime hours.  Her overtime compensation for the week would be $4.50 x 121 = $544.50.

premium, rather than a time-and-a-half premium, for any and all hours that she worked in excess of 40 hours in a given week.  While the application of the half-time method in a misclassification case is a matter of first impression in New York Federal District Courts,[11] the United States Supreme Court, the U.S. Department of Labor, and all Circuit Courts that have addressed this issue support backpay damages at half-time in misclassification cases.  While some courts have limited damages to a half-time premium under the authority of the Supreme Court's decision in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), others have relied on the Department of Labor's "fluctuating workweek" interpretive bulletin, 29 CFR § 778.114. Regardless of the authority relied upon, the half-time method of compensation has been used to calculate backpay damages by every Circuit Court.  The First, Fourth, Fifth, Seventh, and Tenth Circuits have all determined that half-time is appropriate in calculating unpaid overtime compensation in misclassification cases such as this, so long as the employer and employee had a clear, mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked.  *See Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351 (4th Cir. W. Va. 2011); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988).

### 1. Supreme Court's *Overnight Motor Transportation Co. v. Missel* Decision Requires the Calculation of Unpaid Overtime a Half-Time Premium.

The half-time method of calculating overtime compensation is a common-law presumption rooted in the United States Supreme Court's decision in *Overnight Motor Transp.*

---

[11] While some New York District Courts have discussed the fluctuating workweek method, none have decided whether it is applicable in the FLSA misclassification context.

*Co. v. Missel*, 316 U.S. 572 (1942)("*Overnight Motor*").  In *Overnight Motor*, an employee

brought an action to recover unpaid overtime compensation.  316 U.S. at 574.  The employer

paid the employee a flat weekly salary irrespective of how many hours the employee worked,

and no separate payments were made for overtime hours.  *Id.*  The Supreme Court held that in

the absence of any agreement adopting a specific hourly rate for an employee, the regular rate of

pay for a salaried employee is the fixed weekly wage divided by the number of hours actually

worked in that week.  *Id.* at 580 n.16.  Thus, an employee's "regular rate of pay" need not be a

fixed hourly rate, and may vary from week to week depending on the number of hours worked.

*Id.* at 580.[12]  *Overnight Motor* treats a fixed weekly wage paid to an employee as compensation

at the regular rate for *all* hours that the employee works, including overtime hours.  *Id.*  Since an

employee has already been compensated at the regular rate for the overtime hours by means of

the fixed wage, the employer will owe him only one-half of the regular rate for overtime hours

worked and the overtime premium that the employer owes for any hours worked above 40 will

depend on the employee's regular rate of pay for a given workweek.  *Desmond v. PNGI Charles*

*Town Gaming, LLC*, 630 F.3d 351, 356 (4th Cir. 2011); *Urnikis-Negro v. Am. Family Prop.*

*Servs.*, 616 F.3d 665, 675 (7th Cir. 2010).

All of the Circuit Courts that have analyzed the calculation of overtime compensation

under *Overnight Motor* have held that an employee has already received "straight time" pay for

all hours worked over 40 in a work week and is owed unpaid overtime compensation for all

hours worked over 40 in a work week at a rate of half-time.  *See, e.g. Desmond v. PNGI Charles*

*Town Gaming, LLC*, 630 F.3d 351 (4th Cir. 2011)(relying on *Overnight Motor* in finding that,

when "employees agreed to receive straight time pay for all hours worked in a given workweek

---

[12] As is discussed in greater detail on pages 15-17, Plaintiff's hours fluctuated throughout the
course of her employment.

and have already received such pay . . . the 'loss suffered' is the 50% premium for their overtime hours."); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010)(relying on *Overnight Motor* and applying the half-time method of calculating overtime pay when the "[t]he court unequivocally determined that [the plaintiff's] wage was intended to compensate her not for 40 hours per week or some other fixed number of hours, but for any and *all* hours that she worked in a given week"); *Martin v. Tango's Rest.*, 969 F.2d 1319, 1324 (1st Cir. 1992)(relying on *Overnight Motor* in holding that any backpay damages due to a misclassified employee should be calculated at one-half the regular hourly rate).

Here, O'Neill has already received straight time pay for all of her hours worked, and she is therefore entitled to a half-time premium for any hours that she worked in excess of 40 hours per week. When O'Neill was hired by Germanotta in 2010,[13] she understood that her $75,000 annual salary would compensate her for all hours worked. (O'Neill Dep. 36:8-16.) Indeed, O'Neill's deposition testimony demonstrates that she understood that her $75,000 salary was intended to compensate her for all hours worked, not just the first 40 each week:

> Q:   When [Germanotta's manager] told you that they would pay you $75,000 a
>       year, was it your understanding that would be your total compensation?
> A:   Hmmm, I think so, yes.
> Q:   So you understand that the $75,000 a year was for all the work that you would do
>       for Ms. Germanotta?
> A:   Yes, I think so.

(O'Neill Dep. 36:8-16.) Thus, O'Neill was hired with the understanding that her salary would compensate her for all hours worked each workweek, whatever their number. "[W]here the employer and the employee have in fact agreed that a fixed weekly salary will constitute

---

[13] When O'Neill was first employed by Defendants in 2009, she worked entirely outside the US. The FLSA does not apply extraterritorially. 213 U.S.C. § 213(f). Plaintiff agrees that she is not due overtime compensation for the periods worked overseas. *See* Plaintiff's letter to Judge Gardephe, August 30, 2012.

payment at the regular rate for any and all hours worked . . . there is no factual basis for deeming

the salary to constitute straight-time compensation for 40 hours alone." *Urnikis-Negro*, 616 F.3d

at 680.  O'Neill never discussed overtime compensation with anyone, except she asked

Germanotta for additional compensation when Germanotta's tour was extended by a few days in

Paris due to a snowstorm in December 2010.  (O'Neill Dep. 32:8-33:4; Germanotta Dep. 20:17-

21:21.)  Other than this one conversation relating to a delay in the tour, O'Neill never discussed

getting paid overtime.  (O'Neill Dep. 33:17-25.)  Since O'Neill has already been compensated

for all hours worked while employed by Defendants, she would be entitled to a half-time

premium on any overtime hours that she worked rather than a premium of time-and-a-half her

regular hourly rate of pay, and her regular rate should be calculated using all hours worked, not

just the first 40 each week.

### 2. 29 CFR § 778.114 Requires the Calculation of Unpaid Overtime at a Half-time Premium

The DOL promulgated 29 CFR § 778.114 ("Section 778.114"), an interpretive bulletin

endorsing the calculation of overtime at a half-time rate for salaried employees whose hours of

work vary from week to week.  This method of compensation, intended to codify the Supreme

Court's decision in *Overnight Motor*, is called the "fluctuating workweek" method of calculating

overtime.  While the FLSA generally requires that eligible employees be compensated at one and

one-half times their hourly wage for overtime hours worked, there are exceptions.  *See* 29 U.S.C.

§ 207(a)(1).  Under the fluctuating workweek, an employee may be paid a fixed salary as

compensation for all hours worked if the fixed salary compensates the employee for all straight

time hours worked at a rate not less than the minimum wage and the employee is paid an

additional one-half of the regular rate for all overtime hours.  *See* 29 C.F.R. § 778.114(a).  Since

an employee's salary is intended to compensate them for all hours worked, overtime payments of

an additional one-half of the hourly wage results in an employee being paid time and one-half of the employee's regular rate for overtime hours worked.  *Id.  See also* 76 Fed. Reg. 18,832, 18,850 (April 5, 2011).

The fluctuating workweek method is to be used when "there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period."  29 C.F.R. § 778.114(a).  In this circumstance, the regular rate of pay will vary due to the fluctuating hours worked week to week. *Id.* § 114(c).  The DOL's fluctuating workweek bulletin states as follows:

> Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

29 C.F.R. 778.114(a).[14]  The fluctuating workweek method applies when an employee is paid on a salary basis, has hours of work which fluctuate from week to week, and the salary is paid "pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon in a workweek, whether few or many."

*Kadden v. VisuaLex, LLC*, No. 11-cv-4892, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012).[15]

---

[14]*See also* U.S. DOL Field Operations Handbook ("FOH") § 32b04b(a)("since straight time compensation has already been paid, such an employee must receive additional [overtime] compensation for each [overtime] hour in a particular [workweek] computed at not less than one-half the regular rate obtained by dividing the weekly salary by the number of hours worked in that [workweek]")  Available at http://www.dol.gov/whd/FOH/index.htm.

[15] The fluctuating workweek only applies if the employee's salary is large enough to ensure that the employee's hourly wage in a given week—calculated by dividing the weekly fixed salary by the number of hours worked—never falls below the minimum wage.  *Id.* 114(a).  O'Neill never received less than minimum wage.  Even if O'Neill had actually worked "24/7," O'Neill earned

13

The fluctuating workweek method is intended for situations precisely at issue in the case at bar and all of the Circuit Courts that have analyzed the calculation of overtime compensation under the fluctuating workweek have determined that the half-time calculation for all hours worked over 40 is appropriate. *See, e.g.*, *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008)(applying Section 778.114 and calculating damages at a 50% overtime premium when the evidence was sufficient to establish that employees understood that they would receive a fixed salary for all hours worked); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999)(applying Section 778.114 when plaintiff's deposition testimony demonstrated that she "understood that her fixed weekly salary was to be compensation for potentially fluctuating weekly hours," additionally, plaintiff admitted that she was told that the hours were indefinite, understood that she would work days that would last longer than eight hours, and understood and accepted that her employer "did not intend to provide overtime pay if she worked more than 40 hours in a particular week"); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1998)(relying on Section 778.114 in finding that a time-and-a-half calculation "is inappropriate when the employer and employee have agreed on a fixed salary for varying hours").

Moreover, in a January 2009 opinion letter, the DOL made it clear that the fluctuating workweek method of calculating overtime compensation is appropriate in remedial circumstances like the alleged facts presented here.  The DOL considered whether an employer who had improperly misclassified its employees as exempt could pay the employees remedial backpay according to a half-time calculation when the employees were compensated at a fixed rate for all hours worked in a given week. *See* Gershengorn Decl., Ex. 1, Retroactive Payment of Overtime and the Fluctuating Workweek Method of Payment, Wage and Hour Opinion Letter,

---

an hourly wage of $8.59, as explained in Section D, *infra*.  ($75,000/52 = $1,442.31 per week. $1,442.31/7 = $206.04 per day.  $206.04/24 = $8.59 per hour.)

FLSA 2009-03 (Dep't of Labor Jan. 14, 2009).  In approving the use of the fluctuating

workweek method in a backpay situation, the DOL stated that "because the fixed salary covered

whatever hours the employees were called upon to work in a workweek," the employees would

be compensated at one-half their regular rate for each overtime hour worked.  *Id.*  In addition, the

DOL stated that the employee's actual rate, at all times, exceeded the minimum wage and "the

employees received and accepted the salary knowing that it covered whatever hours they

worked."  *Id.*  In such a situation, a half-time method of backpay compensation complies with

the FLSA.  *Id.*

      DOL opinion letters have been accorded great deference and have been used for guidance

by federal courts in New York.  In fact, the Second Circuit has stated that, "[e]ven though not

formally promulgated as regulations, these opinion letters… are at least a body of experience and

informed judgment to which courts and litigants may properly resort for guidance."  *Marcella v.*

*Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 48 (2d Cir. 2002).  *See also Roberts v.*

*Ground Handling Inc.*, 499 F. Supp. 2d 340, 353 n.16 (S.D.N.Y. 2007)( "[DOL] opinion letters

are normally accorded great deference."); *Severin v. Project Ohr, Inc.*, No. 10-cv-9696, 2012

WL 2357410, at *8 (S.D.N.Y. June 20, 2012)( DOL's interpretation of a statute it is charged

with enforcing is entitled to deference and if not irrational or unreasonable, should be upheld).

      The fluctuating workweek method of calculating overtime applies here, and as a result,

O'Neill is owed no more than half-time compensation for each overtime hour worked, to the

extent that she worked overtime, at a regular rate calculated by dividing her weekly salary by the

number of hours that she worked each week.  Defendants have clearly met the requirements of

Section 778.114 as:  (i) there was a clear mutual understanding between Defendants and O'Neill

that her salary would be fixed regardless of how many hours she worked (O'Neill Dep. 36:8-16);

(ii) O'Neill understood that her fixed salary was intended to compensate her for all of the hours that she worked, not just the first 40 hours each week (O'Neill Dep. 36:8-16); (iii) O'Neill understood that the hours that she would be working would exceed 40 hours per week (O'Neill Dep. 27:16); and (iv) O'Neill knew and understood the job of a personal assistant since she had worked in the music industry for years (O'Neill Dep. 28:7-20, 166:15-20; Germanotta Dep. 25:9-15, 303:10-15; Appendix 3.)

        In addition, evidence of the parties' post-hiring conduct reinforces the fact that O'Neill understood that her salary was not meant to compensate her for just the first 40 hours worked in a week. Both parties acknowledged that, while on tour with Ms. Germanotta, the tour schedule was unpredictable and varied widely from day to day. According to O'Neill, "[t]here's no typical day of being on tour." (O'Neill Dep. 71:15-16.) While tour itineraries, showing the dates on which the tour would travel though particular cities were provided to the parties in advance of the tour, daily schedules were often created at the last moment. With respect to daily schedules, no one saw a schedule more than a day or two in advance "because the schedule is made Sunday before Monday and Monday before Tuesday." (Germanotta Dep. 181:6-11; Morris Dep. 98:16-23, 100:20-25.) It is difficult to imagine a work schedule that could possibly fluctuate more widely than this one, where there were no set hours and daily schedules were often unavailable in advance. Furthermore, O'Neill admits that she continued to make her regular salary despite fluctuations in her work schedule. O'Neill attended her own six-hour birthday party at a restaurant (O'Neill Dep. 54:12-55:3), took time off in June 2010 (O'Neill Dep. 55:22-56:20), took off the month of January 2011, during which she worked "[a] couple hours a day, and maybe not every day" (O'Neill Dep. 101:5-12), and was unable to work because of illness on at least two occasions (O'Neill Dep. 164:2-10). By routinely working a fluctuating schedule

without complaint, O'Neill showed that she had a full understanding that her hours would vary, while she received the same salary regardless of how many hours she worked in any given work week.  *See Valerio*, 173 F.3d at 39 (a "clear mutual understanding" of fluctuating hours existed when the plaintiff "routinely worked without complaint more than 40 hours per week without extra pay"); *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997)("[t]he existence of a ['clear mutual understanding'] may be based on the implied terms of one's employment agreement if it is clear from the employee's action that he or she understood the payment plan")(quoting *Monahan v. Cnty. Of Chesterfield*, 95 F.3d 1263, 1281 n.21 (4th Cir. 1996).

### 3. District Courts Have Determined That Calculating Unpaid Overtime at A Half-Time Premium Is An Accepted Method Of Payment For Non-Exempt Workers Paid At A Fixed Salary.

In addition to the five (5) Circuit Courts that have all ruled that the half-time method of calculating overtime is the correct method for mistaken exemption cases, the vast majority of district courts that have addressed this issue have also ruled that the half-time method of calculating overtime compensation is appropriate in circumstances precisely like this one. [16]  *See, e.g.*, *Seymour v. PPG Indus.*, No. 09-cv-1707, 2012 U.S. Dist. LEXIS 122880, at *42 (W.D.Pa. Aug. 29, 2012)("If the salary was for all time worked, the employees are only entitled to the half-time premium, because they already received payment for straight time for their overtime

---

[16]In addition to the five (5) Circuit Courts applying *Overnight Motor* or Section 778.114 to calculate unpaid overtime compensation at a 50% premium, two Circuit Courts have reached the same logical outcome by relying on the common sense notion that an employee who has already been compensated for all hours worked is entitled to only an additional 50% overtime premium to fulfill the requirements of the FLSA.  *See Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 110 (9th Cir. 1975)([a]warding backpay in the amount of one-half of the employee's "regular rate" of pay when the employee had already been compensated for all hours worked, which exceeded 40 per week)*; Yellow Transit Freight Lines, Inc. v. Balven*, 320 F.2d 495, 500 (8th Cir. 1963)([i]n computing damages for unpaid overtime compensation, "[t]he hourly rate should have been multiplied by only one-half rather than one and one-half to determine the compensation due for the extra hour worked each Sunday, since Balven had already been compensated on a straightline basis for the [overtime] hour.").

hours."); *Shaw v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 117582, at *16-*19 (N.D. Ga. July

29, 2010); *Martin v. PepsiAmericas, Inc.*, No. 07-cv-2009 U.S. Dist. LEXIS 112917, at *17-*19

(N.D.Miss. Dec. 3, 2009); *Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F.Supp. 2d

1379, 1381 n.2 (S.D.Fla. 2007)("[v]irtually every court that has considered the question has

upheld the remedial use of half-time in failed exemption cases."); *Tumulty v. FedEx Ground*

*Package Sys., Inc.*, No. 04-1425P, 2005 U.S. Dist. LEXIS 25997 (W.D. Wash. Aug. 16, 2005);

*Donihoo v. Dallas Airmotive, Inc.*, No.  97-CV-0109, 1998 WL 47632 (N.D. Tex. Feb. 2, 1998);

*Rushing v. Shelby Cty. Government*, 8 F. Supp. 2d 737 (W.D.Tenn. 1997); *Zlotek v. Safelite*

*Glass Corp.*, 884 F. Supp. 283 (N.D. Ill. 1995).[17]

### 4.  O'Neill is Not Entitled to a Windfall.

O'Neill may be entitled to unpaid overtime compensation, to the extent she is non-

exempt and she worked overtime.  However, she is not entitled to a windfall.  *See*, *e.g.*,

*D'Camera v. District of Columbia*, 722 F. Supp. 799, 803-04 (D.D.C. 1989)(FLSA Plaintiffs

"are entitled to be made whole, not to a windfall at the District's expense").  Compensatory

---

[17] Despite the overwhelming case law supporting a half-time calculation of unpaid overtime in
exemption cases, a minority of district courts have declined to follow *Overnight Motor* or
Section 778.114.  In *Hasan v. GPM Investments, LLC*, No. 7-cv-1779, 2012 U.S. Dist. LEXIS
121048 (D.Conn. Aug. 27, 2012) the court declined to apply a half-time calculation.  While the
court in *Hasan* mentioned, and outright rejected the Seventh Circuit's *Urnikis-Negro* decision, it
did so in a footnote without any legal analysis as to why the decision should not be followed.  *Id.*
at *10 n.2.  Additionally, it should be noted that all the other Circuit Court decisions applying
half-time overtime compensation in similar circumstances are noticeably absent from the opinion
altogether.   Similarly, in *Perkins v. Southern New England Tel. Co.*, No. 7-cv-967, 2011 U.S.
Dist. LEXIS 109882, *8-*12 (D.Conn. Sept. 27, 2011) the court mentioned the Circuit Court
decisions applying the half-time method of calculating overtime and a handful of district court
opinions declining to apply the half-time method of calculating overtime.  Yet, once again,
without any legal analysis or reasoning, the court in *Perkins* simply stated that it "agrees with
other district courts that have analyzed this issue" in concluding that Section 778.114 does not
apply in misclassification cases. *Id.* at *12.  Defendants submit that *Hasan* and *Perkins* provide
no basis to reject the overwhelming precedent for application of the half-time method, are not
legally binding on this court, and should be rejected.

damages are defined as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." *Black's Law Dictionary* (9th ed. 2009).  O'Neill is not entitled to an additional 150% premium for hours that she has already been paid for, which would result in a payment of 250% of her hourly wage for each overtime hour.  Therefore, to the extent that she is non-exempt and worked overtime, O'Neill is entitled to additional compensation in the amount of 50% of her hourly wage for each overtime hour worked.

### C.  O'Neill Is Not Entitled To Overtime Pay Pursuant To The New York State Labor Law For Hours Worked Outside Of New York

O'Neill's claim for unpaid overtime compensation under the New York State Labor Law must fail because the record evidence clearly establishes that she was not a resident of New York nor did she work in New York during the relevant time period.  Specifically, the New York Labor Law does not apply to workers laboring outside of New York.  *See, e.g.*, *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06-cv-0134, 2006 U.S. Dist. LEXIS 56710, at *21 (S.D.N.Y. Aug. 9, 2006)("[g]iven the lack of any clear intent to apply the New York [Labor] law extraterritorially . . . Plaintiff may not pursue her labor law claims overseas"); *Hammell v. Banque Paribas*, No. 90-cv-4799, 1993 U.S. Dist. LEXIS 14755, at *5 (S.D.N.Y. Oct 19, 1993)("The [New York Labor Law] contains no clear statement of intended extraterritorial effect.  Additionally, the law appears in an article of the labor law clearly aimed at regulating the conduct of actors within the state's boundaries.  The purpose of this area of the labor law is clearly to protect workers laboring in New York.  Nothing in the statute suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers and thus collect attorney's fees").  Moreover, the New York Minimum Wage Act contains the provision governing overtime and compensable work.  N.Y. Prac. § 7:40. The statement of public policy in the New York Minimum Wage Act provides a clear intention

that it apply to "persons employed in some occupations *in the state of New York*." NYLL §
650(2)(emphasis added).

   While O'Neill alleges that she is owed unpaid overtime compensation under the New
York State Labor Law, she did not reside in New York while she worked for Defendants and she
does not currently reside in New York.  According to O'Neill, she lived in New York only
before she "moved to L.A" in 2008.  (O'Neill Dep. 7:12-20.)  O'Neill testified that she has lived
in Los Angeles and has not lived at any residence in New York since 2008.  (O'Neill Dep. 7:23-
9:21.)  O'Neill also testified that, while her parents own a home on Long Island, she has not
lived with her parents since 2008.  (O'Neill Dep. 7:25-8:14.)  While employed by Defendants,
O'Neill only returned to New York when Germanotta's tour travelled through New York for
performances or over some breaks in the tour schedule.  (O'Neill Dep. 53:15-23; 62:22-66:11.)
Therefore, O'Neill cannot be considered a person employed "in the state of New York."[18]  As a
result, any application of the NYLL, to the extent it applies at all, should be limited to the few
days that O'Neill actually worked in New York.

### D.  Plaintiff's Alleged "On Call" Time Is Not Compensable As A Matter Of Law.

   O'Neill alleges that she was "on call" to Ms. Germanotta twenty-four hours a day, seven
days a week for the entire thirteen-month period of her employment in 2010 and 2011.  (Compl.
¶ 19.) O'Neill's claim that she is entitled to compensation for literally every hour of every day

---

[18] While Defendants maintain that O'Neill is not covered by the New York Labor Law, if she
were, the fluctuating workweek or half-time method would apply.  *See Santillan v. Henao*, 822
F.Supp.2d 284, 292 (E.D.N.Y. 2011)("New York's Labor Law is the state analogue to the
federal FLSA . . . it . . . mirrors the FLSA in compensation provisions regarding minimum hourly
wages and overtime.").  *See also* Gershengorn Decl., Ex. 2, Mortgage Loan Originators, Opinion
Letter, RO-10-0136 (New York Dep't of Labor Feb. 1, 2011).  ("[A]n employee who earns a
fluctuating workweek salary of $500 who works fifty hours has a derived regular rate of $10 per
hour and is, therefore, entitled to an additional $50 for the ten overtime hours worked.").

that she was employed by Defendants must fail since O'Neill was able to use her alleged "on-call" time for her personal use.

The DOL Regulations provide that, in limited circumstances, an employee's "on-call" time may be compensable:

> Time spent away from the employer's premises under conditions that *are so circumscribed that they restrict the employee from effectively using the time for personal pursuits* also constitutes compensable hours of work. For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable. *The employees in this example cannot use the time for their personal pursuits.*" 29 C.F.R. § 553.221(c).

(emphasis added). Thus, time spent predominately for the employer's benefit constitutes time "worked" under the FLSA. 29 C.F.R. § 785.14. The "[f]acts may show that the employee was engaged to wait," making the time compensable, or that the employee was "waiting to be engaged," rendering the time not compensable. *Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002), quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). When periods of inactivity are unpredictable, usually of short duration, and the employee is "unable to use his time effectively for his own purposes," then an employee is "engaged to wait" and the inactive time is compensable under the FLSA. 29 C.F.R. § 785.15. Similarly, "[a]n employee who is required to remain on call on the employer's premises or so close thereto *that he cannot use the time effectively for his own purposes* is working while 'on call.'" 29 C.F.R. § 785.17 (emphasis added). However, the DOL Regulations specifically state that "[i]f employees who are thus on call are not confined to their homes or to any particular place, but may come and go as they

21

please, provided that they leave word where they may be reached, the hours spent 'on call' are not considered as hours worked." 29 C.F.R. § 785.223.  *See also* 29 C.F.R. § 785.17.[19]

Thus, the ultimate question in deciding whether purported on-call time is compensable is "whether the restrictions placed on the employee preclude using the time for personal pursuits." 29 C.F.R. § 553.221(d).  *See also Daniels v. 1710 Realty, LLC,* No. 10-cv-0022, 2011 WL 3648245, at *6 (E.D.N.Y. Aug. 17, 2011)(quoting *Nonnenmann v. City of New York*, No. 02-cv-10131, 2004 WL 1119648 (S.D.N.Y. May 20, 2004)("[w]hen an employee is not confined to his home or any particular place and may come and go as he pleases, the 'hours spent 'on call' are not considered as hours worked'"); *Zhong v. Zijun Mo.*, No. 10-cv-0806, 2012 U.S. Dist. LEXIS 99966, at *15 (E.D.N.Y. July 17, 2012)("on-call" time was not compensable when the employee was able to use the time for her own benefit, including gambling, shopping, or engaging in other personal activities).

O'Neill's allegation that she should be compensated for the time she spent "on call" must fail since the record evidence clearly demonstrates that she was able to use her time for her personal use.  According to O'Neill, "I'm always working 24/7 because I'm on call.  My phone is on, I'm expected to carry my phone with me at all times, to pick up the phone no matter what I'm doing, no matter where I am, and tend to whatever it is that [Germanotta] needs.  So I consider myself to be on call 24/7 and available for her 24/7."  (O'Neill Dep. 56:24-57:7.)  When asked whether she had any days off from work, O'Neill stated that "you can't be off if you're 24/7 expected to answer the phone."  (O'Neill Dep. 128:11-13.)  However, O'Neill admits that she had no restrictions on what she could do so long as she carried a cell phone and/or

---

[19] While Defendants maintain that the NYLL does not apply to O'Neill, see *supra* 19-20, compensable "on call" time under state law is analogous to federal law.  See Gershengorn Decl., Ex. 3, "On-call" Time, Opinion Letter, RO-08-002 (New York Dep't of Labor Feb. 15, 2008).

BlackBerry with her.  (O'Neill Dep. 98:7-14, 152:14-21.)  The record evidence shows that she

was, in fact, able to use her time for her own purposes.  The fact that she was required to carry a

phone with her does not transform the many "on call" hours spent for her own benefit into

compensable on call time.  O'Neill testified that she could enjoy a number of personal activities,

for her own benefit, during her alleged "on call" time.  According to O'Neill, she was able to:

- o   go out to dinner and visit with friends (O'Neill Dep. 69:18-70:14);
- o   go out to a club (O'Neill Dep. 137:8-21);
- o   attend a carnival (O'Neill Dep. 138:3-139:7);
- o   "chill" in a hotel room (O'Neill Dep. 143:7-144:25);
- o   work on her tan by the pool at a hotel (O'Neill Dep. 152:6-21);
- o   go out to a restaurant for dessert (O'Neill Dep. 156:6-20);
- o   go to a doctor's appointment (O'Neill Dep. 133:19-134:17);
- o   spend time with her parents (O'Neill Dep. 133:23-134:9);
- o   visit with her sister in Caldwell, New Jersey (O'Neill Dep. 157:2-158:19);
- o   go on a date (O'Neill Dep. 60:6-16);
- o   get a manicure and pedicure (O'Neill Dep. 161:3-10); and
- o   get her hair cut (O'Neill Dep. 160:2-161:10).

While O'Neill maintains that she should be paid for the time that she spent engaged in

these activities because she was "on-call," the undisputed facts show that she was able to use her

"on call" time for her own purposes.  Because O'Neill's definition of "on call" time does not

comport with the law and she was clearly able to use her time for her own benefit, O'Neill's

alleged "on-call" time is not compensable as a matter of law.

 **E.  O'Neill's Spread of Hours Claim Must Fail Because She Has Already Been
Compensated At An Amount Greater Than The Minimum Wage Due Plus An
Additional Hour For Each Day Of Her Employment.**

  The New York Spread of Hours law provides that an "employee shall receive one hour's

pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New

York's minimum wage law] for any day in which . . . the spread of hours exceeds 10 hours."  12

NYCCR 142-2.4.  However, O'Neill is not entitled to an additional hour's pay at the minimum hourly wage for the days in which she worked ten or more hours.  First, the NYLL has no application because O'Neill was not a resident of New York nor did she live in New York during the course of her employment.[20]

Second, "New York's spread-of-hours law does not apply to plaintiffs who earned substantially more than minimum the wage."  *Malena v. Victoria's Secret Direct, LLC*, No. 09-cv-5849, 2012 U.S. Dist. LEXIS 115900, at *49 (S.D.N.Y. Aug. 16, 2012).  Courts in this district have held that "[i]f the total compensation is equal to or greater than the minimum wage due, including compensation for an additional hour for each day in which the spread of hours exceeds ten, no additional payments are due the employee because of the spread-of-hours provision found in 12 NYCRR 142-2.4."  *Chan v. Triple 8 Palace*, No. 03-cv-6048, 2006 U.S. Dist. LEXIS 15780, at *75 (S.D.N.Y. Mar. 30, 2006). Indeed, "[m]ost courts in this Circuit have ruled that New York's spread of hours provision applies only to employees earning minimum wage."  *Li Ping Fu v. Pop Art Int'l Inc.*, No. 10-cv-8562, 2011 U.S. Dist. LEXIS 113614, at *22 (S.D.N.Y. Sept. 19, 2011).  The language of New York's spread of hours law specifically states that the premium is "in addition to the minimum wage," and therefore will not affect workers whose weekly total compensation is already sufficiently above the minimum wage.[21]  *Id.*

---

[20] See pages 19-20, *supra*.  The New York spread of hours law similarly has no application to the days that Plaintiff worked outside of New York.

[21] In a small minority of cases, New York courts have rejected this interpretation of the spread of hours law and have held that spread of hours pay is due regardless of whether the employee's salary covers an additional hour at minimum wage per day.  *See*, *e.g.*, *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327 (S.D.N.Y. 2005).  Yet virtually all of cases since *Yang* have disagreed with its holding as to the applicability of the spread of hours provision.  *Roach v. T.L. Cannon Corp.*, No. 10-cv-0591, 2012 U.S. Dist. LEXIS 120507, at 7 (N.D.N.Y. Aug. 24, 2012)(citing cases).

The New York Department of Labor has made it clear that "the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage."  Gershengorn Decl., Ex. 4, Spread of Hours Pay, Opinion Letter, RO-08-0086 (New York Dep't of Labor Aug. 26, 2009).

During her employment in 2010 and 2011, O'Neill received an annual salary of $75,000. (O'Neill Dep. 31:22-24.)  Even assuming that O'Neill worked every hour of every single day that she was employed by Defendants as stated in the Amended Complaint—a physical impossibility and an allegation that Defendants clearly dispute—she still earned well above the minimum wage.  According to this calculation, O'Neill earned $8.59 per hour for each hour of every day that she was employed.[22]  Had O'Neill been paid minimum wage of $7.25 an hour, she would have earned only $174 per day and $63,336 per year.  Once an extra hour's pay is added at the minimum wage for each day of O'Neill's employment, had she earned minimum wage she would have earned $181.25 per day and $65,975 per year.  Thus, even using O'Neill's calculation of the number of hours that she worked—an alleged twenty-four hours a day, seven days a week for each workweek of her employment—she still earned significantly more than the minimum wage.  Since the case law and the New York DOL have clearly indicated that the New York spread of hours law is inapplicable when an employee's hourly wage is above minimum wage, and O'Neill has already earned more than minimum wage plus an additional hour of pay at minimum wage per day, O'Neill is not entitled to additional spread of hours wages.

## II.    CONCLUSION

Based on the foregoing, Defendants are entitled to partial summary judgment in their favor.

---

[22] See footnote 12, *supra.*

Dated: New York, New York
       December 7, 2012

                                 PROSKAUER ROSE LLP

                    By:       /s/ Steven D. Hurd
                         Steven D. Hurd
                         Brian J. Gershengorn
                         Eleven Times Square
                         New York, NY 10036
                         (212) 969-3000
                         shurd@proskauer.com
                         bgershengorn@proskauer.com
                         *Attorneys for Defendants*