PROSKAUER ROSE LLP
Steven D. Hurd
Brian J. Gershengorn
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
JENNIFER L. O'NEILL,                :
                                     :
                   Plaintiff,        :   Civ. No.: 11 CIV 9128 (PGG)
      -- against --                  :   ECF
                                     :
MERMAID TOURING INC. AND             :
STEFANI GERMANOTTA, a/k/a            :
"LADY GAGA,"                         :
                   Defendants.       :
                                     :
                                     :
---------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated: New York, New York
       January 29, 2013

                                              PROSKAUER ROSE LLP

                                     By:      /s/ Steven D. Hurd
                                              Steven D. Hurd
                                              Brian J. Gershengorn
                                              Eleven Times Square
                                              New York, NY 10036
                                              (212) 969-3000
                                              shurd@proskauer.com
                                              bgershengorn@proskauer.com
                                              *Attorneys for Defendants*

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff Is Owed No More Than A 50% Premium On Overtime Hours Worked. ................................................................................................................... 2

        A.    Plaintiff Ignores The Overwhelming Precedent Requiring Calculation of Backpay Damages In FLSA Misclassification Cases At Half-Time. ............................................................................................ 2

        B.    Plaintiff Incorrectly Interprets *Overnight Motor v. Missel* To Place Requirements On Defendants That Are Not Required By Law. ................ 3

        C.    Plaintiff's Interpretation Of The Fluctuating Workweek Interpretive Bulletin is Based On A Misunderstanding Of The Law. ............................................................................................................ 4

    II.    The New York Labor Law Has No Application Outside Of New York. ................ 7

    III.    Plaintiff Fails to Dispute Her "On Call" Time Was Used For Her Own Purposes. ............................................................................................................... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Armour & Co. v. Wantock et al*,
   323 U.S. 126 (1944).................................................................................................................10

*Ayers v. SGS Control Services, Inc.*,
   2007 WL 646326 (S.D.N.Y. 2007).............................................................................................4

*Blackmon v. Brookshire Grocery Co.*,
   835 F.2d 1135 (5th Cir. 1988)....................................................................................................6

*Blotzer v. L-3 Communications Corp.*,
   2012 WL 6086931 (D. Ariz. 2012).............................................................................................7

*Desmond v. PNGI Charlestown Gaming*,
   630 F.3d 351 (4th Cir. 2011) .....................................................................................................5

*Givens v. Will Do, Inc.*,
   2012 U.S. Dist. LEXIS 63537 (S.D. Tex. May 4, 2012) ............................................................7

*Hasan v. GPM Investments, LLC*,
   2012 U.S. Dist. LEXIS 121048 (D.Conn. Aug, 27, 2012) .........................................................7

*In re Texas EZPawn Fair Labor Standards Act Litigation*,
   633 F. Supp. 2d 395 (W.D. Tex. 2008)(Austin, J.)....................................................................6

*Kadden v. Visualex, LLC*,
   2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012)...........................................................................5

*O'Brien v. Town of Agawam*,
   350 F.3d 279 (1st Cir. 2003)..................................................................................................2, 4

*Overnight Motor Transp. Co. v. Missel*,
   316 U.S. 572 (1942)("*Overnight Motor*").................................................................................2

*Perkins v. Southern New England Tel. Co.*,
   2011 U.S. Dist. LEXIS 109882 (D. Conn. Sept. 27, 2011) ........................................................7

*Ransom v. M. Patel Enters., Inc.*,
   825 F.Supp.2d 799 (W.D. Tex. 2011)........................................................................................6

*Russell v. Wells Fargo & Co.*,
   672 F. Supp. 2d 1008 (N.D. Cal. 2009) .....................................................................................7

*Schreckenback v. Tenaris Coiled Tubes, LLC*,
    2013 U.S. Dist. LEXIS 6744 (S.D. Tex. Jan. 16, 2013) ............................................................7

*Urnikis-Negro v. Am. Family Prop. Servs.*,
    616 F.3d 664 (7th Cir. 2010) ....................................................................................................2

*Valerio v. Putnam*,
    173 F.3d 35 (1st Cir. 1999) .......................................................................................................2

**STATUTES**

New York Labor Law .................................................................................................................1, 7, 8

**OTHER AUTHORITIES**

29 C.F.R. 778.114(a) ............................................................................................................... passim

**PRELIMINARY STATEMENT**

Confronted with a record devoid of material fact issues and claims that are fatally defective as a matter of law, Plaintiff Jennifer O'Neill ("Plaintiff" or "O'Neill") devotes much of her Opposition to gross mischaracterizations of the deposition testimony (including her own). Rather than address Defendants' well founded Motion for Partial Summary Judgment, O'Neill transparently seeks to mislead the Court into believing that she was mistreated by Ms. Germanotta, a fiction presented for the purposes of distracting the Court from Defendants' sound legal arguments. In stark contrast to the oppressive work environment imaginatively portrayed by Plaintiff, Plaintiff was given preferential treatment by Ms. Germanotta because of their longstanding friendship.[1]

As for O'Neill's claim that she is owed time-and-a-half of her hourly wage for all hours worked over 40, O'Neill completely ignores the Circuit Court precedent and DOL guidance affirming the calculation of unpaid overtime at a half-time rate in misclassification cases. In a similar fashion, and in an attempt to bolster her otherwise non-viable claim that the New York Labor Law applies to her claims, O'Neill now asserts, for the first time, that she was a New York domiciliary while employed by Defendants. O'Neill's untenable assertion is not only irrelevant but is directly contradicted by her own deposition testimony. Finally, O'Neill's contention that her on-call time is compensable is entirely meritless since she has already conceded that she used her alleged "on call" time for personal use.

---

[1] Plaintiff and Ms. Germanotta had been "best friends" for years. (Germanotta Dep. 11:5.)(Gershengorn Decl., Ex. 5.) Ms. Germanotta's manager described the working relationship between O'Neill and Ms. Germanotta as "best friends rather than the difference between somebody who is your assistant and who is not your friend." (Morris Dep. 60:5-7.)(Gershengorn Decl., Ex. 6.) Ms. Morris noted that O'Neill "was taking advantage of their friendship" when she "did not answer emails," "was unreliable," and "would call in sick often." (Id. 71:3-15.) As most accurately stated by Ms. Germanotta, "[t]here was a general sense that [O'Neill] felt like she was entitled to great things because…she was my friend." (Germanotta Dep. 296:3-5.)

**ARGUMENT**

I. **Plaintiff Is Owed No More Than A 50% Premium On Overtime Hours Worked.**

    A. **Plaintiff Ignores The Overwhelming Precedent Requiring Calculation of Backpay Damages In FLSA Misclassification Cases At Half-Time.**

Defendants compensated O'Neill for all of the hours that she worked and she is therefore entitled to no more than a 50% premium on her overtime hours worked (to the extent she worked overtime). Indeed, Plaintiff readily admits that "she was paid 'straight time' for all hours worked, including in those weeks in which she worked over 40 hours." (Pl. Opp. 19.) It is absurd to suggest that a misclassified employee who was paid an annual salary of $75,000 to work any and all hours that she was needed in a week should be due hundreds of thousands of dollars in unpaid overtime compensation for hours for which she has already been paid. The First, Fourth, Fifth, Seventh, and Tenth Circuits (the only Circuits to address this issue) have all understood that it is only logical to calculate backpay at half time in misclassification cases.[2]

Plaintiff relies heavily on *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 664 (7th Cir. 2010), a decision that illustrates the two approaches to the "half-time" calculation of damages that have been used by the courts. In *Urnikis-Negro*, the Seventh Circuit stated that while some courts have limited damages to a half-time premium in FLSA misclassification cases under the authority of the Department of Labor's "fluctuating workweek" interpretive bulletin, 29 CFR § 778.114 ("Section 778.114"), others have relied on the United States Supreme Court's decision in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942)("*Overnight Motor*"). While Plaintiff cites to *Urnikis-Negro* numerous time in her Opposition for the proposition that

---

[2] Plaintiff incorrectly states that the First Circuit held otherwise in *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003). In *O'Brien*, the Court relied on *Valerio v. Putnam*, 173 F.3d 35 (1st Cir. 1999) which held that half-time is the proper method for calculating remedial backpay in a mistaken classification case. *O'Brien* is not a mistaken classification case and does not address nor contemplate remedial backpay as in the instant case.

2

Section 778.114 will not apply in a FLSA misclassification case, she conveniently ignores the rest of the court's holding.  In *Urnikis-Negro*, the Seventh Circuit relied on *Overnight Motor* in concluding that the plaintiff was <u>still</u> due no more than a half-time premium for overtime hours worked even if Section 778.114 did not apply.

      **B.  Plaintiff Incorrectly Interprets *Overnight Motor v. Missel* To Place Requirements On Defendants That Are Not Required By Law.**

      Plaintiff's interpretation of the United States Supreme Court's decision in *Overnight Motor* is a clear misapplication of the law and ignores the Circuit Court precedent requiring payment of a half-time premium for overtime hours when an employee has already been compensated by a fixed wage for all hours worked.  According to Plaintiff, *Overnight Motor* requires an employment agreement to "include a provision for overtime pay of at least 'fifty per cent for the hours actually worked over the statutory maximum' to comply with the FLSA."  (Pl. Opp. 14.)  To the contrary, the Supreme Court held in *Overnight Motor* that, in the *absence* of any agreement adopting a specific hourly rate, the regular rate of pay for a salaried employee is the fixed weekly wage divided by the number of hours worked. (Def. Mot. 10.)

      The Circuit Courts (and the majority of District Courts) that have addressed the application of *Overnight Motor* in a misclassification case have applied a half-time premium for overtime hours so long as the employer and employee had a clear, mutual understanding that the fixed weekly salary was compensation for all hours worked each week.  (See Def. Mot. 9-12.) Here, Plaintiff understood that the $75,000 would be her "total compensation" for "all of the work" that she did for Ms Germanotta.  (O'Neill Dep. 36:8-16.)   Both parties understood that Plaintiff was <u>not</u> hired to work a set number of hours per week and that her salary was <u>not</u> intended to cover only the first forty (40) hours worked per week. (Def. Mot.11-12; 15-17.)

3

Thus, it is only logical that an employee who has already been compensated "straight time" pay, (i.e. hourly pay without overtime pay, for all of the hours that she worked) should not be paid an additional 150% of her hourly wage to comply with the FLSA. Holding otherwise would require an employer to pay a misclassified employee 250% of their hourly wage for each overtime hour worked. Such a conclusion is directly contrary to the purposes of the FLSA, which intends to compensate a FLSA plaintiff their unpaid overtime compensation, not to provide them with a windfall at their employer's expense. (See Def. Mot. 18-19.)

### C. Plaintiff's Interpretation Of The Fluctuating Workweek Interpretive Bulletin is Based On A Misunderstanding Of The Law.

Plaintiff incorrectly states that the contemporaneous payment of overtime is required for the fluctuating workweek method to apply and that Section 778.114 has no application in FLSA misclassification cases (Pl. Opp. 14-15.) In support of these unfounded arguments, Plaintiff selectively cites cases that do not even address the application of the fluctuating workweek in misclassification cases.[3] (Pl. Opp. 10-11.) Furthermore, Plaintiff ignores both Circuit Court precedent and DOL guidance approving the use of the fluctuating workweek method in misclassification cases. The Circuit Courts and the majority of District Courts that have addressed this issue have found that the "understanding" required for application of Section 778.114 is whether "the fixed salary is compensation . . . for the hours worked each workweek, whatever their number, rather than working 40 hours or some other fixed work period." 29 C.F.R. 778.114(a). (See Def. Mot. 13-15; 17-18.)

The DOL clearly approved of applying Section 778.114 in misclassification cases in a 2009 opinion letter stating that the retroactive payment of overtime at half-time conforms with

---

[3] For example, neither *O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003) nor *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007) address the application of the fluctuating workweek in a misclassification case.

4

the FLSA when a fixed salary covers whatever hours an employee is called to work and the employee received and accepted the salary knowing that it covers whatever hours they worked. (See 12/7/2012 Gershengorn Decl., Ex. 1). Indeed, the Fourth Circuit relied in part on the DOL opinion letter in finding that backpay should be calculated at half-time in misclassification cases. *See Desmond v. PNGI Charlestown Gaming*, 630 F.3d 351, 356 (4th Cir. 2011). Courts in this District have also looked to the opinion letter for guidance. *See Kadden v. Visualex, LLC*, 2012 WL 4354781, at *8 n.113 (S.D.N.Y. Sept. 24, 2012)(citing to the opinion letter and stating that, "'because the fixed salary covered whatever hours the employees were called upon to work in a workweek . . . and the employees received and accepted the salary knowing that it covered whatever hours they worked,' a retroactive payment of overtime using the fifty percent multiplier conforms with FLSA requirements.") (See also Def. Mot. 13-15.)

The record evidence in this case demonstrates that O'Neill's fixed salary of $75,000 was compensation for all the hours worked in each workweek. In fact, during her deposition, Plaintiff conceded that she believed that her salary would cover "all the work that [she] would do for Ms. Germanotta," regardless of the number of hours that she worked each week. (O'Neill Dep. 36:13-16.) Plaintiff also testified that she knew and understood what her job entailed since she had worked in the music industry for years. (Def. Mot. 16.) Plaintiff's contention that there was no "clear mutual understanding" of the job requirements is clearly rebutted by her own testimony. Plaintiff should not be permitted to now manipulate the record evidence and argue that her salary was meant to cover a 40 hour workweek so that she can collect hundreds of thousands of dollars on top of her annual salary for hours for which she has already been paid.

Furthermore, evidence of the parties' post-hiring conduct reinforces the fact that Plaintiff's salary was not meant to compensate her only for the first 40 hours that she worked

each week.  Both parties understood that Plaintiff would continue to make her $75,000 annual salary regardless of how many hours she worked each week.  (See Def. Mot. 16-17.)  Plaintiff completely ignores the undisputed fact that she continued to make her regular salary despite the many fluctuations in her work schedule, including the entire month of January 2011 in which she admits to working "[a] couple hours a day, and maybe not every day."  (Def. Mot. 4-5.)[4]

Plaintiff's reliance upon two Texas District Court decisions to support her contention that she should be compensated at a rate of time and a half for all hours worked over 40 in any workweek are unavailing.  First, it should be noted that the Fifth Circuit has addressed this issue and has stated that remedial backpay in a misclassification case should be calculated at a half-time rate.  In *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988), the Court relied on Section 778.114 and found that a time-and-a-half calculation "is inappropriate when the employer and employee have agreed on a fixed salary for varying hours." *Id.* at 1138.

The two Western District of Texas decisions to which Plaintiff cites—both authored by Magistrate Judge Austin—simply disagree with the Fifth Circuit holding in *Blackmon*.  In *In re Texas EZPawn Fair Labor Standards Act Litigation*, 633 F. Supp. 2d 395, 406 (W.D. Tex. 2008)(Austin, J.), the court held that, while it "would ordinarily follow a Fifth Circuit precedent with which it simply disagrees . . . I firmly believe that the decision in *Blackmon* is wholly inconsistent with the FLSA, and cannot be reconciled with the purposes of the Act."  Magistrate Judge Austin reached the same conclusion in *Ransom v. M. Patel Enters., Inc.*, 825 F.Supp.2d

---

[4] It is undisputed that Plaintiff was paid her full salary for approximately a four-week period in January 2011 when she worked a reduced schedule.  Notably, Plaintiff does not seek unpaid overtime for this period because she acknowledges that she worked fewer than 40 hours per week. (Def. Mot. 4-5.)(Pl. 56.1 St., No. 56.)  Plaintiff's unsupported statement that Defendants have not "demonstrate[d] as a matter of law that Ms. O'Neill ever had a <u>short</u> week from which the long weeks fluctuated" (Pl. Opp. 18.) is directly contradicted by Plaintiff's sworn testimony as well as her 56.1 Statement.

799 (W.D. Tex. 2011). While Magistrate Judge Austin may disagree with the Fifth Circuit holding in *Blackmon*, it is still the law in that Circuit.

Many other Texas District Courts have relied on *Blackmon*, the law within the Fifth Circuit, in holding that the fluctuating workweek method (half-time compensation) should be applied in calculating backpay in misclassification cases. *See, e.g., Schreckenback v. Tenaris Coiled Tubes, LLC*, 2013 U.S. Dist. LEXIS 6744 (S.D. Tex. Jan. 16, 2013)(applying the fluctuating workweek method when Plaintiff had a clear understanding that he would receive a fixed salary for varying hours); *Givens v. Will Do, Inc.*, 2012 U.S. Dist. LEXIS 63537, at *13-*14 (S.D. Tex. May 4, 2012)(applying the fluctuating workweek method and finding that *EZPawn's* method of calculating regular rate solely on the first 40 hours worked is contrary to DOL guidelines). Thus, Plaintiff's reliance on the legally unsupported decisions of one Texas judge in the Western District of Texas is unpersuasive.[5]

## II. The New York Labor Law Has No Application Outside Of New York.

Plaintiff admitted at her deposition that she was not a resident of New York while she was employed by Defendants and that she only lived in New York before she "moved to L.A." in 2008 (emphasis added). (Def. Mot. 20.) Additionally, O'Neill testified that she has not lived at

---

[5] Plaintiff's reliance on two cases out of the District of Connecticut is also unpersuasive. In *Hasan v. GPM Investments, LLC*, 2012 U.S. Dist. LEXIS 121048 (D.Conn. Aug, 27, 2012) the court rejected the Seventh Circuit's *Urnikis-Negro* decision in a footnote without any legal analysis and without mention of the other Circuit Court decisions applying a half-time calculation in misclassification cases. *Id.* at *10 n.2. Similarly, in *Perkins v. Southern New England Tel. Co.*, 2011 U.S. Dist. LEXIS 109882, *8-*12 (D. Conn. Sept. 27, 2011), the court rejected the Circuit Court decisions applying the half-time method of calculating overtime without any analysis or reasoning. These cases provide no basis to reject the overwhelming application of the half-time method and should be rejected. Defendants do not dispute that other district courts, such as *Blotzer v. L-3 Communications Corp.*, 2012 WL 6086931, (D. Ariz. 2012) and *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009) have ruled that the fluctuating workweek method does not apply to misclassification cases. However, these cases are the in the minority and not a single Circuit Court has ruled that time-and-a-half is the proper method of calculating unpaid overtime in misclassification cases.

any residence in New York since 2008. (Id.) Now Plaintiff attempts to claim that she is a New York domiciliary and points to her driver's license, issued in 2004 and now expired, which provides a New York address at which Plaintiff admits she no longer lives. (Pl. Opp. 20; Def. Mot. 20.) However, Plaintiff's driver's license does not change her unequivocal deposition testimony. Plaintiff did not live in or work in New York while employed by Defendants except for the few days during which Ms. Germanotta's tour travelled through New York.[6]

Plaintiff does not refute that the New York Labor Law has no application to actions that occurred outside of the state's boundaries. (Def. Mot. 19-20.) Whether the labor laws of other jurisdictions apply to conduct outside of state boundaries is irrelevant to this case because Plaintiff has not alleged claims under the state laws of other jurisdictions. (See Pl. Opp. 20). To the extent Plaintiff alleges that the cases cited by Defendants are inapplicable insofar as they "involved employees who were transferred to a foreign office and complained of acts which occurred following the transfer," (Pl. Opp. 20) that is precisely what Plaintiff attempts to do here by complaining of employment practices that occurred outside of New York while she did not live in New York. Accordingly, any application of the New York Labor Law, to the extent it applies at all, should be limited to the few days that Plaintiff actually worked in New York.

### III. Plaintiff Fails to Dispute Her "On Call" Time Was Used For Her Own Purposes.

In her Opposition, Plaintiff makes a number of false and misleading statements about her employment with Defendants, none of which address the actual legal principles relevant to

---

[6] Plaintiff's argument that New York is her "hometown" since that is "where she stayed when Ms. Germanotta was not on tour" (Pl. Opp. 20) is entirely disingenuous and consistent with her *modus operandi* of continuously shifting her arguments to meet her needs at a given moment. Plaintiff's indication that she *chose* to come to New York directly conflicts with her allegations that she was on call "24/7" and without control over her own whereabouts and schedule.

8

whether her "on call" time is compensable.[7]  The reason for this is clear: Plaintiff's sworn testimony demonstrates that she was "waiting to be engaged" rather than "engaged to be waiting," rendering her alleged "on call" time not compensable under the law.  (Def. Mot. 21.)

Plaintiff concedes that in order for time, "to be compensable pursuant to the FLSA, an employee's on-call hours must be spent predominately for the employer's benefit."  (Pl. Opp. 21.)  In direct contradiction with her deposition testimony, Plaintiff now claims that "[t]hose limited occasions during which Ms. O'Neill could arguably 'leave the job' were not long enough for her to use the time for her own purposes." (Pl. Opp. 23.)  However, Plaintiff has not and cannot refute the undisputed fact that, while "on call" to Ms. Germanotta, she was able to go out to dinner and visit with friends, go out to a club, attend a carnival, "chill" in a hotel room, work on her tan by the pool at a hotel, go out to a restaurant for dessert, go to a doctor's appointment, spend time with her parents, visit with her sister in Caldwell, New Jersey, go on a date, get a manicure and pedicure, and get her hair cut.  (See Def. Mot. 23.)  Plaintiff notably makes no attempt to explain how these activities could possibly be for anyone's benefit except for her own.

Instead, Plaintiff argues that all of her time was compensable insofar as she "was expected to be available as needed throughout each hour of each day of the week."  (Pl. Opp. 22.)  However, the law is clear that an expectation to answer the phone or to otherwise "be available" does not render time otherwise spent for personal pursuits compensable.  (Def. Mot. 21-22.)  It defies logic and legal precedent to suggest that Plaintiff should be compensated for the time that she spent enjoying personal activities such as tanning and getting manicures.

---

[7] O'Neill fabricated that it was her expression of a need for rest that "became the 'catalyst' for her termination." (Pl. Opp., 24.) Yet, when asked why she was terminated, O'Neill stated, "I don't feel that she gave me a particular reason," and "I think we just weren't getting along anymore." (O'Neill Dep. 40:7-14.)(Gershengorn Decl., Ex. 7.) Contrary to Plaintiff's gross mischaracterization of the record evidence, her persistent demands for a private space on Ms. Germanotta's jet and entitled attitude prompted her termination. (Germanotta Dep. 134-35.)

9

Furthermore, and without citation to any of the record evidence, Plaintiff alleges that "Ms. Germanotta's personal assistant is generally expected to be available to Ms. Germanotta and thus work uninterrupted, extended shifts from the time she first 'reports' to work until her 'shift' ends." (Pl. Opp. 24.) The only record evidence related to this is Ms. Germanotta's deposition testimony expressly stating that O'Neill had breaks whenever she wanted them.[8]

Finally, Plaintiff's reliance on *Armour & Co. v. Wantock et al*, 323 U.S. 126, 133 (1944) is entirely misplaced and is used only in an attempt to mislead the Court about the proper legal standard for "on call" time. Plaintiff relies on *Armour* in arguing that "[w]hether or not Ms. O'Neill could 'go do as she pleases'" is irrelevant to a determination of whether her "on call" time is compensable. (Pl. Opp. 24.) Yet, in *Armour*, the Supreme Court reached the exact opposite conclusion. The Court considered whether firemen who were required to stay at a fire station for extended periods of time should be paid for time that they spent waiting on their employer's premises for emergency calls. *Armour,* at 132. The Court held that the "on call" time was compensable since the firemen could <u>not</u> use their time for personal pursuits, even though they were permitted to listen to the radio and play cards at the fire station. *Id.* at 133. A fireman who is required to remain at a fire station is clearly in a different position than Plaintiff, who was out with friends and family and engaging in other numerous activities purely for her own benefit and without connection to Ms. Germanotta.

## CONCLUSION

For the reasons set forth herein and in Defendants' underlying Motion, Defendants are entitled to partial summary judgment in their favor.

---

[8] For instance, during concerts, a personal assistant "could go on the bus and lay on her back, if she wanted to, and sleep through the whole show, she doesn't have to be there." (Germanotta Dep. 119:20-21.) Ms. Germanotta made clear that "[T]here was no time under any circumstances that I ever demanded that Jennifer not leave when she wasn't working." (Id. 155:2-4.)