UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 10, 2013
```

JENNIFER O'NEILL,

                    Plaintiff,

          - against -

MERMAID TOURING INC. AND STEFANI
JOANNE GERMANOTTA, a/k/a "LADY
GAGA,"

                    Defendants.

**MEMORANDUM**
**OPINION & ORDER**

11 Civ. 9128 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff Jennifer O'Neill was employed as a personal assistant to Stefani

Germanotta, a/k/a "Lady Gaga," in early 2009 and also from about February 5, 2010 through her

termination on March 5, 2011.  (Am. Cmplt. (Dkt. No. 13) ¶ 20)  In her remaining claims,

Plaintiff asserts that Germanotta and her company, Mermaid Touring, Inc., violated the Fair

Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and New York's Labor Law, §§ 190 et

seq. by failing to pay her overtime wages during the 2010-11 time period.[1]  (Am. Cmplt. ¶ 34-

49).  Plaintiff alleges that she was "expected to be working and/or on call every hour of every

day" during her employment with Defendants (Am. Cmplt. ¶ 19) and, as a result, she is owed

overtime pay for every hour of every day beyond forty-hours per week for every week of her

employment.  (Am. Cmplt. ¶ 22)

            Defendants seek summary judgment on their claims that (1) Plaintiff is not

entitled to overtime compensation under the Labor Law for hours she worked outside of New

---

[1]  Plaintiff has withdrawn all claims related to her employment in 2009, see August 30, 2012 Pltf.
Ltr. (Dkt. No. 77), and has also withdrawn her "spread of hours" claim, which is set forth in the
Amended Complaint's Third Cause of Action.  See Plt. Opp. Br. (Dkt. No.65) at 25; Am. Cmplt.,
Third Cause of Action)  Accordingly, that claim will be dismissed.

York State; (2) Plaintiff's alleged "on call" time is not compensable; and (3) any overtime

compensation due Plaintiff should be calculated at half-time, rather than at time-and-a-half.

(Dkt. No. 57)

## **BACKGROUND**

Sometime before 2008, Defendant Germanotta moved into Plaintiff's apartment

building on the Lower East Side, and the two eventually became friends and roommates.  (Def.

R. 56.1 Stmt. ¶¶ 3-4, 14) [2]  Germonatta, also know by her stage name "Lady Gaga," is a singer

and songwriter.  (Def. R. 56.1 Stmt. ¶ 1).  In 2008, O'Neill moved to Los Angeles.  (Def. R. 56.1

Stmt. ¶ 5)

In early 2009, Germanotta offered O'Neill – who had prior work experience in the

music industry – a job as her personal assistant.  (Def. R. 56.1 Stmt. ¶¶ 13, 17)  Germanotta

offered O'Neill this position because the two were friends.  (Def. R. 56.1 Stmt. ¶ 14)  O'Neill

accepted the job offer in Los Angeles, and began working for Defendants in early 2009.  (Def. R.

56.1 Stmt. ¶¶ 13, 15)  Between 2009 and 2011, Germanotta was consistently engaged in

international tours, and O'Neill always traveled with the tour.  (Def. R. 56.1 Stmt. ¶¶ 2, 61)

When Germanotta hired O'Neill she did not explain exactly what O'Neill's duties

would be, but O'Neill knew "what a personal assistant is" and that she would be working "24/7."

(Def. R. 56.1 Stmt. ¶¶ 21-23)  O'Neill's understanding was that she would be paid $1,000 a

---

[2]  This Court relies on facts drawn from a party's Local Rule 56.1 statement where the opposing
party has admitted those facts or has not controverted them with citations to admissible evidence.
See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .
fails to controver a fact so set forth in the moving party's Rule 56.1 statement, that fact will be
deemed admitted.").  Where the non-moving party disagrees with the moving party's
characterization of the cited evidence, and has presented an evidentiary basis for doing so, the
Court relies on the non-moving party's characterization of the evidence.  See Cifra v. Gen. Elec.
Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-
movant's favor in deciding summary judgment motion).

week to work "24/7."  (Def. R. 56.1 Stmt. ¶ 24)  O'Neill worked as Germonatta's personal

assistant for approximately four to eight weeks in early 2009.  (Def. R. 56.1 Stmt. ¶ 18)

O'Neill's employment ended when she resigned.  (Def. R. 56.1 Stmt. ¶ 19)  While working for

Germanotta in 2009, O'Neill was paid $1,000 per week.  (Def. R. 56.1 Stmt. ¶ 20)

On or about February 5, 2010, Germanotta re-hired O'Neill as her personal

assistant.  (Def. R. 56.1 Stmt. ¶ 27)  Once re-hired, O'Neill again expected to be working a "24/7

job."  (Def. R. 56.1 Stmt. ¶ 28)  Germanotta did not discuss salary with O'Neill, but several

weeks into her employment, Troy Carter – Germanotta's manager – told O'Neill that she would

be paid $75,000 per year.  (Def. R. 56.1 Stmt. ¶¶ 29-30)  O'Neill understood that her $75,000

annual salary would be her total compensation for all the work she performed for Germanotta.

(Def. R. 56.1 Stmt. ¶ at 32)  There was no discussion of overtime compensation, although much

later – in December 2010 – O'Neill told Germanotta that she should receive additional

compensation when Germanotta's tour was extended by two or three days.  (Def. R. 56.1 Stmt.

¶¶ 33, 34; Pltf. R. 56.1 Resp. ¶ 65)  O'Neill's employment was terminated by Germanotta on or

about March 5, 2011.  (Def. R. 56.1 Stmt. ¶ 36)

O'Neill describes her duties for Germanotta as entailing

> anything and everything that [Germanotta] needed, from cleaning the hotel room and
> cleaning up after her to helping her put her makeup out, have her makeup done, making
> sure her hair looked right before she went on stage, making sure she drank water, making
> sure she had tea, making sure that she ate, making sure she was hopefully on time to
> places.  And just being there for her.

(Pltf. R. 56.1 Resp. ¶ 95(quoting O'Neill Dep. 20:7-16))  O'Neill monitored Germanotta's email,

handled certain of her email and telephone communications, and was responsible for setting up

her computer and printing out documents Germanotta wanted.  (Pltf. R. 56.1 Resp. ¶¶ 98-99,

101)  O'Neill also handled all of Germanotta's luggage – generally twenty bags – clothes,

accessories, makeup, and toiletries as the tours proceeded.  (Pltf. R. 56.1 Resp. ¶¶ 100, 149-50,

152)  O'Neill was also responsible for ensuring that Germanotta received her "special food" at

every location.  (Pltf. R. 56.1 Resp. ¶ 105)  For performances, O'Neill was responsible for

ensuring that Germanotta arrived on time, had ample time for hair-styling, makeup, and voice

warm-ups, and then appeared on stage on time.  (Pltf. R. 56.1 Resp. ¶ 106)  O'Neill also assisted

with costume changes during performances.  (Pltf. R. 56.1 Resp. ¶ 107) After a performance,

O'Neill was responsible for having ice packs, tea, and a shower ready at the venue, for ensuring

that dinner was available, and for arranging the exit from the venue.  (Pltf. R. 56.1 Resp. ¶ 108)

During the 2010-11 time period, Plaintiff worked for Germanotta "24/7":

> I'm always working 24/7 because I'm on call.  My phone is on, I'm expected to carry my
> phone with me at all times, to pick up the phone no matter what I'm doing, no matter
> where I am, and tend to whatever it is that [Germanotta] needs.  So I consider myself to
> be on call 24/7 and available for her 24/7.

(Def. R. 56.1 Stmt. ¶ 51 (quoting O'Neill Dep. 56-57))  According to O'Neill, she was expected

to be available to Germanotta "24/7" even when Germanotta was on vacation or when O'Neill

was engaged in personal matters, including meals with friends, doctors' appointments or visits

with family.  (Def. R. 56.1 Stmt. ¶¶ 37-50; Pltf. R. 56.1. Resp. ¶¶ 37-50)  There was no specific

work schedule for O'Neill; she was expected to be available to perform tasks for Germanotta at

any time of the day or night.  (Pltf. R. 56.1. Resp. ¶ 37)  In describing the time requirements of

O'Neill's job, Germanotta testified:

> You don't get a schedule.  You don't get a schedule that is like you punch in and you can
> play fucking Tetris at your desk for four hours and then you punch out at the end of the
> day.  This is when I need you, you're available.

(Pltf. R. 56.1 Resp. ¶ 163 (quoting Germanotta Dep. 16-17, 107)  No time records were kept

concerning O'Neill's work for Germanotta.  (Pltf. R. 56.1 Resp. ¶ 166)

4

Because Germanotta and O'Neill frequently slept in the same bed – O'Neill never had her own hotel room while on tour – she was required to address Germanotta's needs throughout the night: "there were times when Ms. Germanotta woke [O'Neill] up [and said] . . . get up and take care of what I need.'" (Pltf. R. 56.1 Resp. ¶¶ 175-182 (quoting O'Neill Dep. 68)) If Germanotta was watching a DVD in the middle of the night and grew tired of it, "she woke up Ms. O'Neill to take out and replace the DVD." (Pltf. R. 56.1 Resp. ¶ 179 (citing O'Neill Dep. 120-21))

O'Neill further testified that even when Germanotta was on vacation, O'Neill was still required to work:

> We were never really on vacation. Every time she leaves an appointment, every time she walks outside, she has to be fully dressed, fully makeup'd, full hair, full everything.
>
> Every day is a work day for her, so every day is a work day for the rest of us. There is no, we're going to stay in, we're going to sleep. There is no, let's put on sweatpants and go out to the movies and be girlfriends. It doesn't work like that.
>
> If she needs to get dressed, if she needs to get up, then I need to work and make sure that she has clothes on, makeup on, hair on, has drank some water, taken her medication and had something to eat, which is every day of her life during that time.

(Pltf. R. 56.1 Resp. ¶ 140 (quoting O'Neill Dep. 52-53) At her deposition, Germanotta agreed that she "work[s] 24 hours a day." (Pltf. R. 56.1 Resp. ¶ 192 (quoting Germanotta Dep. 301))

The parties agree that at two points during O'Neill's employment she did not work "24/7" for Germanotta. Between January 7, 2011 and February 6, 2011, O'Neill worked only about two hours a day, and on some days may not have worked at all. (Def. R. 56.1. Stmt. ¶ 56; Pltf. R. 56.1 Resp. ¶¶ 56, 130) Other than days within this period, O'Neill asserts that "she never had a 'day off.'" (Pltf. R. 56.1 Resp. ¶ 130) She states that she was also given time off for two weeks in June 2010 during a tour break, but nonetheless "worked every day, with a schedule

that varied depending upon Ms. Germanotta's needs." (Pltf. R. 56.1 Resp. ¶ 59 (quoting O'Neill Dep. 55-56); see also Pltf. R. 56.1 Resp. ¶ 144)

With respect to O'Neill's claim for overtime compensation, Germanotta testified that "she deserves every one of her $75,000 that we agreed to. But she does not deserve a penny more." (Pltf. R. 56.1 Resp. ¶ 192 (quoting Germanotta Dep. 301)

## DISCUSSION

As noted above, Defendants have asked this Court to rule, as a matter of law, that (1) Plaintiff is not entitled to overtime compensation under the Labor Law for hours she worked outside of New York State; (2) Plaintiff's alleged "on-call" time is not compensable; and (3) any overtime compensation due Plaintiff should be calculated at half-time, rather than at time-and-a-half. (Dkt. No. 57)

## I.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). However, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . .

6

cannot by themselves create a genuine issue of material fact where none would otherwise exist."

Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotations and citations

omitted).  Instead, the non-moving party must "offer some hard evidence showing that its version

of the events is not wholly fanciful."  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.

1998).

## II.  CLAIM FOR OVERTIME COMPENSATION UNDER NEW YORK LAW FOR WORK PERFORMED OUTSIDE NEW YORK

Defendants argue that they are entitled to summary judgment on O'Neill's claim

for overtime compensation under New York law to the extent that she seeks overtime

compensation for work performed outside of New York.  (Def. Br. 19)  In response, Plaintiff

claims that she "is entitled to overtime pay under the New York State Labor Law for hours she

worked outside of New York, since New York is [her] domicile and her work throughout the

country involved only temporary assignments."  (Plt. Opp. Br. 19)

New York recognizes the "settled rule of statutory interpretation[] that unless

expressly stated otherwise, 'no legislation is presumed to be intended to operate outside the

territorial jurisdiction of the state . . . enacting it.'"  Goshen v. Mut. Life Ins. Co. of N.Y., 286

A.D.2d 229 (1st Dept. 2001) (quoting 73 Am.Jur.2d Statutes § 359, at 492), aff'd, 98 N.Y.2d 314

(2002); see also N.Y. Stat. Law § 149 ("The laws of one state can have no force and effect in the

territorial limits of another jurisdiction, in the absence of the consent of the latter.").

Here, Plaintiff's claim under New York law for overtime compensation is brought

under 12 NYCRR § 142-2.2 and New York Labor Law § 198(1-a).  (Am. Cmplt. ¶¶ 42-43)  12

NYCRR § 142-2.2 provides, in pertinent part:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the

exemptions of sections 7 and 13 [,] of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended. . . .

12 NYCRR § 142-2.2.  Labor Law § 198(1-a) provides, in pertinent part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

N.Y. Labor Law § 198(1-a)

These statutory provisions "contain[] no clear statement of intended extraterritorial effect. . . . [Indeed, the] purpose of this area of the labor law is clearly to protect workers laboring in New York.  Nothing in the statute suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers . . . ."  Hammell v. Banque Paribas, No. 90 Civ. 4799(JSM), 1993 WL 426844, at *1 (S.D.N.Y. Oct. 22, 1993)); see also Kassman v. KPMG LLP, 2013 WL 452913, at *12 (S.D.N.Y. Feb. 7, 2013) (same).

Plaintiff's reliance on residence or domicile is misplaced.  The crucial issue is where the employee is "laboring," not where he or she is domiciled.  See Hammell, 1993 WL 426844, at *1; Webber v Mut. Life Ins. Co. of New York, 287 A.D.2d 369, 370 (1st Dept. 2001) (citing Padula v. Lilarn Props., 84 N.Y.2d 519, 522-23 (1994) ("As to the law to be applied, it is settled that the protection afforded to New York employees by the Labor Law, . . .  has no application to an accident that occurs outside New York State, even where all parties are New York domiciliaries.").

For these reasons, Defendants' motion for summary judgment is granted to the extent that Plaintiff seeks recovery under the New York Labor Law for overtime work performed outside of New York.

## III.   CLAIM FOR "ON-CALL" TIME

Defendants argue that O'Neill may not recover for "on-call" time when she was able to engage in activities of her choice while "on-call."  (Def. Br. 21)  Plaintiff contends that Defendants are not entitled to summary judgment on this issue, because the record shows that O'Neill "was expected to be available as needed throughout each hour of each day of the week, i.e., '24/7.'"  Plaintiff further argues that Defendants have not demonstrated that Germanotta told O'Neill "that she could leave her job and return by a specific time, and that the time allotted was long enough for Ms. O'Neill to use the time effectively for her own purpose."  (Pltf. Br. 21-22)

### A.   Applicable Law

Although Congress did not define the term "work" in the FLSA, see Reich v. New York City Transit Auth., 45 F.3d 646, 649 (2d Cir. 1995), the Second Circuit has defined "work" as

> exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities.

Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008) (citing Holzapfel v. Town of Newburgh, NY, 145 F.3d 516, 522 (2d Cir.1998); Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944); Armour & Co. v. Wantock, 323 U.S. 126 (1944); Steiner v. Mitchell, 350 U.S. 247, 252-53 (1956)).

Work need not be "performed during scheduled on-duty hours for an employee to receive compensation."  Holzapfel, 145 F.3d at 522.  Where the work conducted during disputed

overtime hours is the same as an employee's "regularly scheduled activities," then those overtime hours are necessarily compensable. Chao, 514 F.3d at 286 (awarding overtime hours and noting that it was "significant . . . that there seems to be no distinction between the exertion of Gotham's nurses during unauthorized and authorized hours."). Moreover, even idle time may be considered work if it is "predominantly for the employer's benefit." Armour & Co., 323 U.S. at 133; ("an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen"); see also 29 C.F.R. § 778.223 ("working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness").

Department of Labor regulations offer guidance as to how to distinguish between on-duty and off-duty "on-call" hours:

> A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of inactivity. The rule also applies to employees who work away from the plant. For example, a repair man is working while he waits for his employer's customer to get the premises in readiness. The time is worktime even though the employee is allowed to leave the premises or the job site during such periods of inactivity. The periods during which these occur are unpredictable. They are usually of short duration. In either event the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer. In all of these cases waiting is an integral part of the job. The employee is engaged to wait.

29 C.F.R. § 785.15.

In contrast,

> [p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes

depends upon all of the facts and circumstances of the case.

29 C.F.R. § 785.16.[3]

       The issue of whether an employee is entitled to overtime compensation presents a mixed question of law and fact.  It is for the court to determine as a matter of law whether the plaintiff's activities constitute work and it is for the fact finder to determine as a question of fact how much of the plaintiff's time was spent within the definition of work and how much of that time was spent with the employer's actual or constructive knowledge.  Holzapfel, 145 F.3d at 521; Capasso v. Metropolitan Transp. Auth., 198 F. Supp. 2d 452, 459 (S.D.N.Y. 2002) (quoting Holzapfel, 145 F.3d at 521) ("Once decided, the factfinder must 'decide as a question of fact, not only how much of plaintiff's time . . . [falls] within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employer's actual or constructive knowledge.'"); Monserrate v. City of New York, 99 Civ. 12173, 2000 WL 1741673 at *1 (S.D.N.Y. Nov. 27, 2000) ("[T]his court is required to determine whether Plaintiffs' activities fall within the definition of the term 'work' sufficient for them to maintain their cause of action.").

       The Supreme Court has "counseled that the determination of what constitutes work is necessarily fact-bound."  Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 64 (2d Cir.1997) (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.")); see, e.g., Skidmore v. Swift, 323 U.S. 134, 136-37, (1944) ("Whether in a concrete case such time falls within or without the [Fair Labor Standards]

---

[3]  While the Court recognizes that Department of Labor regulations are not binding here, courts have concluded that DOL's regulations in this area "interpret the statute correctly" and therefore have accorded them "some deference."  See, e.g., Moon v. Kwon, 248 F.Supp.2d 201, 228 n.16 (S.D.N.Y. 2002).

Act is a question of fact to be resolved by appropriate findings of the trial court. . . . The law does not impose an arrangement upon the parties.  It imposes upon the courts the task of finding what the arrangement was.").[4]

"Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits . . . constitutes compensable hours of work."  29 C.F.R. § 553.221(c)  However, where employees "on call are not confined to their homes or to any particular place, but may come and go as they please, provided that they leave word where they may be reached, the hours spent 'on call' are not considered as hours worked."  29 C.F.R § 778.223.

To avoid liability for "on-call" hours, an employer must "definitely [tell the employee] in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived."  29 C.F.R. § 785.16(a)  "Whether the time [during which an employee can leave the job] is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case."  Id.  "[W]hen periods of inactivity are 'unpredictable . . . [and] usually of short duration,' and the employee 'is unable to use the time effectively for his own purpose,' then the employee is 'engaged to wait,' and the inactive time constitutes 'work' time under the FLSA – even if 'the employee is allowed to leave the premises or the job site during such periods of inactivity."  Moon v. Kwon, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (quoting 29 C.F.R. § 785.15).

---

[4] See also Daniel B. Abrahams, Sandra J. Boyd, Gilbert J. Ginsburg, Employer's Guide to the FLSA § 620 (Dec. 2002) (The Supreme Court has held that "determination of the compensability of on-call time involves a fact-specific, case-by-case analysis.") 2 Compensation & Benefits § 13:4 "Factors Affecting the Determination of Time Worked" (2004) (enumerating factors to be considered).

Courts have consistently held that "on-call" time can constitute work and is compensable under the FLSA where an employer restricts an employee's ability to use time freely for the employee's own benefit.  See Armour & Co., 323 U.S. at 133 ("Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."); Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008) (employees may seek compensation for time spent "on call" where their employer restricts their ability to use time freely for their own benefit); Nonnenmann v City of New York, No. 02 Civ.10131 (JSR) (AJP), 2004 WL1119648, at * 26 (S.D.N.Y. May 20, 2004) (same).

In Moon v. Kwon, 248 F. Supp. 2d 201 (S.D.N.Y. 2002), Moon claimed "that he was required by his employers to work as a maintenance man for a hotel and related businesses essentially seven days a week and virtually 24 hours per day for years, without receiving the premium pay required by [law]."  Id. at 203.  Moon sought overtime pay for evening hours when he was waiting for assignments and for overnight hours when he was sleeping at the hotel and would respond to emergency calls.  Id. at 228-29.  The employer argued that it did not require Moon to spend his evenings and nights at the hotel and that he in fact spent much of his time socializing with friends and co-workers in the hotel basement.  Id.

Following a bench trial, Judge Lynch concluded that Moon was entitled to overtime pay for the evening hours, but not for the overnight periods.  Id. at 229-30.  With respect to the overnight hours, the court found that Moon was on duty only when he was required to answer emergency calls, which happened only about three times per month.  Id. at 230.  "The fact that Moon was present in the hotel during the periods of inactivity in between his night-time calls does not mean that he was 'on duty' during those intervals."  Id.  However, Judge Lynch

13

reached a different outcome as to the evening hours, finding that Moon was not free to leave the premises in the evenings, and that even if he

> did spend some time during the evenings socializing in the hotel while waiting for assignments, that [was] not sufficient to render the waiting time noncompensable. Moon's "waiting time" during the evening hours was of a different nature than the night-time hours – his work during the evenings was much more frequent than during the night, and the periods of inactivity during the evenings were considerably shorter, making it far more difficult for him "to use the time effectively for his own purposes.'

Id. at 230 (citing 29 U.S.C. § 785.15).  The Moon case further illustrates the intensive factual inquiry that is required to determine whether "on-call" hours qualify for overtime compensation.

## B.    Analysis

As discussed above, the first question is whether Plaintiff's "on-call" time could potentially constitute work.  Holzapfel, 145 F.3d at 521.  The law provides – and Defendants do not dispute – that "on-call" time can constitute work and is compensable under the FLSA where the employer restricts an employee's ability to use the time freely for his or her own benefit.  See Armour & Co. 323 U.S. at 133; Singh, 524 F.3d at 361; Nonnenmann, 2004 WL1119648, at *26; Moon, 248 F.Supp. at 230.  Accordingly, this Court concludes that Plaintiff's "on-call" time potentially qualifies for overtime compensation.

However, questions of fact preclude any determination at this time concerning how much of Plaintiff's "on-call" time constitutes "work" within the meaning of the FLSA.  As discussed above, there is conflicting evidence as to whether Plaintiff was able to use time spent "on-call" for her personal use.  This is a fact-specific inquiry best left to the fact finder.  Armour & Co., 323 U.S. at 133.

The record in the case demonstrates that Plaintiff was Germanotta's only personal assistant for most of the time at issue and both sides agree that she was expected to be available as needed throughout each hour of each day.  (Germonatta Dep. 16-17, 56-57, 107; see

14

Germanotta Dep. 107 (describing O'Neill's hours as "when I need you, you're available");

O'Neill Dep. 56-57 (stating that O'Neill had to be available to Germanotta "24/7"))  While on

tour, O'Neill often slept in the same bed as Germonatta, and in the event Germonatta needed

something in the middle of the night, Plaintiff was expected to satisfy that demand.  (O'Neill

Dep. 71-73, 120-21)  While Defendants point to certain activities that they claim show that

O'Neill was able to use "on-call" time for her own purposes – given the record – it is a jury

question how much of O'Neill's "on-call" time was "so circumscribed [by Germonatta]" that

O'Neill was restricted from "effectively using the time for personal pursuits."  29 C.F.R. §

553.221(c).  Defendants have not demonstrated that they are entitled as a matter of law to

judgment on this issue.

## IV.  CALCULATION OF PLAINTIFF'S OVERTIME COMPENSATION CLAIMS UNDER THE FLSA

Defendants concede – for purposes of their summary judgment motion only – that

Plaintiff was misclassified as an exempt employee and that she does not meet the administrative

exemption set forth in 29 U.S.C. § 213(a)(1).  (Def. Br. 1 n.1)  Accordingly, for purposes of this

motion, Defendants concede that Plaintiff is entitled to some amount of overtime compensation.

The issue is how the amount of overtime compensation due should be calculated.

Defendants argue that Plaintiff agreed to a salary of $75,000 for all hours she

worked, including those in excess of 40 hours weekly.  Accordingly, in Defendants' view,

Plaintiff has already received straight time for all hours that she worked, and she is only entitled

to an overtime premium of half-time, rather than the usual time-and-a-half, for hours in excess of

40 per week.  (Def. Br. 6-8)  In making this argument Defendants rely primarily on the

"fluctuating workweek" ("FWW") approach set forth in 29 C.F.R. § 778.114(a), an interpretative

rule promulgated by the Department of Labor that addresses – under the FLSA – the payment of

overtime to salaried employees "who do not customarily work a regular schedule of hours."  29 C.F.R. § 778.114(c).

Plaintiff contends that "Defendants' argument in favor of application of the 'half time' method of calculating overtime compensation relies on law which was not designed to formulate damages in a lawsuit, and ignores specific 'prerequisites' which do not exist in this case."  (Plt. Br. 7)  Plaintiff contends that application of FWW is not proper under 29 C.F.R. § 778.114(a) absent proof that (1) O'Neill received "extra compensation" for the weeks in which she worked more than forty hours; (2) there was a "clear mutual understanding" about how overtime hours would be calculated and compensated; and (3) "O'Neill ever had a short week from which the long weeks fluctuated."  (Pltf. Br. at 17-18) (emphasis in original)

A.    **Applicable Law**

The FLSA requires that non-exempt employees be paid at least one and one-half times their regular rate of pay for all hours over 40 worked during a particular week.  29 U.S.C. § 207(a).[5]

In 1968, the Department of Labor ("DOL") issued a bulletin interpreting this section of the Act to address the payment of overtime to salaried employees "who do not customarily work a regular schedule of hours."  29 C.F.R. § 778.114(c).  The bulletin was issued in connection with two Supreme Court cases that had addressed payment of overtime to employees who had fluctuating hours from week-to-week, and who wished to receive a predictable, flat rate of pay:  Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942) and Walling v. A.H. Belo Corp., 316 U.S. 624 (1942).

The relevant portions of the DOL FWW bulletin provide:

---

[5]  "Non-exempt employees" are those employees who do not work in a "bona fide executive, administrative or professional capacity," 29 U.S.C. § 213(a)(1), even if they receive a salary.

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.  Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week.  Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

* * *

(c) The "fluctuating workweek" method of overtime payment may not be used unless the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours in not worked.  Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole . . . . On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

29 C.F.R. § 778.114.

Five factors must be present before an employer may use the fluctuating workweek method to pay a non-exempt employee:

(1) the employee's hours fluctuate from week to week; (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the

> employee works during the week; (3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employer and the employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of forty (40) during the week.

Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078, 2007 WL 3171342, at *2 (S.D.N.Y. Oct. 9, 2007); see also 29 C.F.R. § 778.114(a).  The reasoning underlying the half-pay rate – as opposed to the standard time-and-a-half rate for hours over 40 – is that, by way of agreement, the employee has already been compensated for all base hourly pay including the hours worked over 40 per week.  See 29 C.F.R. § 778.114(b).

Neither the Second Circuit nor any court in this District has opined on whether the DOL's FWW bulletin and methodology may be applied retroactively to determine the measure of overtime damages for employees – such as O'Neill – who have been misclassified as exempt.[6] Other federal courts have divided on the issue.  Several circuit courts have applied the FWW methodology to misclassified employees seeking overtime compensation damages, see, e.g., Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 357 (4th Cir. 2011); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 681 (7th Cir. 2010); Clements v. Serco, Inc., 530 F.3d 1224, 1230-31 (10th Cir. 2008), Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 39 (1st Cir. 1999); and Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir. 1988), while many district courts have determined that the FWW methodology should not be applied in a misclassification case.  See, e.g., Costello v. Home Depot USA, Inc., 3:11-CV-953 (JCH), 2013 WL 2097422, at *6 (D. Conn. May 13, 2013); Wallace v. Countrywide Home Loans, Inc., No.

---

[6]  One judge in this District has commented that "courts have generally concluded that FWW is not the appropriate measure of damages because it would have been impossible for the parties to have formed a clear and mutual understanding that the FWW method applied and overtime would not have been paid in the requisite contemporaneous manner."  Stein v. Guardsmark, LLC, No. 12 Civ. 4739(JPO); 2013 WL 3809463, at *3 n.4 (S.D.N.Y. July 23, 2013).

SACV 08-1463-JST (MLGx), 2913 WL 1944458, at * 5 (C.D. Cal. April 29, 2013); Hasan v. GPM Inves., LLC, 896 F. Supp. 2d 145 (D. Conn. 2012); Blotzer v. L-3 Communications Corp., 2012 WL 6086931, at *9 (D. Az. Dec. 6, 2012) (finding that "the FWW method should not be applied in a misclassification case in light of the FLSA's remedial purpose"); Perkins v. S. New England Tel. Co., No. 3:07-CV-967 (JCH), 2011 WL 4460248, at *3 (D. Conn. Sept. 27, 2011); Russell v. Wells Fargo & Co., 672 F. Supp. 2d. 1008, 1013 (N.D. Cal. 2009); Rainey v. Am. Forest & Paper Assoc., Inc., 26 F.2d 82, 100-02 (D.D.C. 1998) (finding that, as a matter of law, an employer cannot prove a clear mutual understanding or contemporaneous payment of overtime premium in a misclassification case).

## B.    Analysis

As an initial matter, this Court concludes that Defendants have not laid the factual predicate for application of the FWW methodology.  Missel, the DOL FWW bulletin, and the cases that have adopted the FWW methodology, all address salaried, non-exempt employees whose hours fluctuated from week-to-week.  See, e.g., Missel, 316 U.S. at 574 ("The work for which he was employed involved wide fluctuations in the time required to complete the duties."); 29 C.F.R. § 778.114 (addressing salaried employees who "have hours of work which fluctuate from week to week"); Urnikis-Negro, 616 F.3d at 667 (noting that plaintiff, when hired, understood that her hours would fluctuate with the volume of the firm's appraisal business); Valerio, 173 F.3d at 39 (finding that Valerio "understood that the fixed weekly salary was to be compensation for potentially fluctuating weekly hours").  Here, as noted above, there is a factual dispute as to whether O'Neill worked fluctuating hours from week-to-week, or was instead required to be available to Germanotta "24/7."  Under these circumstances, this Court cannot rule as a matter of law that the FWW methodology applies here.  See Blotzer, 2012 WL 6086931, at

*9 (declining to apply FWW methodology where plaintiff "consistently worked more than 40 hours per week"; "[t]he FWW was intended to apply to 'fluctuating' work schedules, i.e. schedules in which an employee endures long hours some weeks but enjoys the benefit of short hours in other weeks, all at the same rate of pay"); Hasan, 896 F.Supp.2d at 150 (same); Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 61 (D.D.C. 2006) (same).

Moreover, this Court agrees with those circuit and district court decisions finding that the DOL FWW bulletin is not applicable to calculation of overtime damages where an employee has been misclassified. As the Seventh Circuit has noted, the DOL

> rule on its face is not a remedial measure. It says nothing about how a court is to calculate damages where, as here, the employer has breached its obligation to pay the employee an overtime premium. Its focus instead is on how an employer may comply with its statutory obligations in the first instance and avoid liability for breach of those obligations.

Urnikis-Negro, 616 F.3d at 678. In short, the FWW methodology set forth in the DOL bulletin was never intended to be applied retroactively in a case where an employee has been misclassified as exempt.

Perhaps for this reason, several requirements for application of the FWW methodology are not and will not be present in a misclassification case such as this. For example, DOL's

> interpretive rule plainly envisions the employee's contemporaneous receipt of a premium apart from his fixed wage for any overtime work he has performed. The rule expressly requires both "a clear mutual understanding [between] the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number" and that the employee "receive [ ] extra compensation, in addition to such salary for all overtime hours worked at a rate not less than one-half his regular rate of pay."

Id. (emphasis in Urnikis-Negro). Here, as presumably in all misclassification cases, there was no contemporaneous payment of overtime compensation, nor was there a "clear mutual

understanding [between] the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek." Id.  Indeed, in every misclassification case, there was an understanding – at least on the part of the employer – that the employee was not entitled to overtime compensation.  This Court concludes that DOL's FWW bulletin was never intended to be applied retroactively to calculate overtime compensation damages for a misclassified employee and may not properly be used for that purpose.  Id. at 681 ("section 778.114(a) . . . is not a remedial rule and thus does not supply the proper analytical framework for a determination of damages once an employer has been found to have breached its obligation to pay overtime under the FLSA"); see also id. at 679 (collecting cases).

Several courts have, however, applied the FWW methodology – not as a result of the DOL FWW bulletin – but instead as a natural outgrowth of the Supreme Court's decision in Missel.  See Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351 (4th Cir. 2011); Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665 (7th Cir. 2010).

In Urnikis-Negro, for example, the Seventh Circuit affirmed a district court's award of a half-pay overtime premium to calculate overtime compensation in a misclassification case, relying on Missel.  616 F.3d at 684.  The court found that where an employee is "paid a fixed weekly sum for any and all hours worked," routinely works substantial amounts of overtime, and never receives overtime compensation, the Missel court held that "the employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the total number of hours worked in that week. . . . The employee is then entitled to an overtime premium of one-half of that rate." Id. at 681.  While Missel itself does not reflect – in this Court's view – clear approval of the half-pay premium, the companion case to Missel – Walling v. A.H. Belo

Corp., 316 U.S. 624 (1942) – provides figures that permit the reader to confirm that the Missel Court intended to approve a half-pay multiplier. See Walling, 316 U.S. at 634.

Assuming arguendo that Missel and Walling approve a half-pay multiplier, it appears to this Court that O'Neill is similarly situated to the worker in Missel. O'Neill, like Missel, was paid a fixed salary regardless of how many hours she worked; she routinely worked more than 40 hours per week; and she never received any overtime compensation. What remains is whether the parties' factual dispute about whether O'Neill's hours fluctuated on a weekly basis precludes application of Missel at this juncture.

Given the material issues of fact concerning whether or not O'Neill had a fluctuating work schedule, the absence of authority in this Circuit as to the proper measure of overtime damages for a misclassified employee, and the split of opinion in the federal courts outside New York as to the proper measure of overtime damages for a misclassified employee, this Court will not grant summary judgment on this issue absent a factual finding from the jury as to whether O'Neill's employment involved fluctuating hours or instead was "24/7," as she has maintained. Accordingly, Defendants' summary judgment motion on this issue will be denied without prejudice.

## **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part. The Third Cause of Action is dismissed on consent. The Clerk of the Court is directed to terminate the motion. (Dkt. No. 57)

The parties are directed to comply with this Court's Individual Rules concerning the preparation of a pre-trial order. The joint pre-trial order must be filed by October 11, 2013. Motions in limine, voir dire requests, and requests to charge are due on October 11, 2013

Responsive papers, if any, are due on October 18, 2013.  Trial will commence on November 4,

2013, at 9:00 a.m., in Courtroom 705, 40 Foley Square, New York, New York.

Dated: New York, New York
         September 10, 2013

                                   SO ORDERED


                                   _____
                                   Paul G. Gardephe
                                   United States District Judge